# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2347

_____

The Alliance Insurance Company;       *
Farmers Alliance Mutual Insurance     *
Company,                                     *
                                           *
          Appellants,                  *
                                           *   Appeal from the United States
         v.                           *   District Court for the
                                           *   District of Minnesota.
Glenn R. Wilson, Jr., in his official    *
capacity as Commissioner of the       *
Minnesota Department of Commerce,  *
                                           *
         Appellee.                   *

_____

Submitted: March 10, 2004
Filed: September 24, 2004

_____

Before SMITH, HANSEN, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

The Alliance Insurance Company and Farmers Alliance Mutual Insurance Company (collectively "Alliance") appeal the district court's[1] order granting summary judgment to the Commissioner of the Minnesota Department of Commerce (the

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

"Commissioner") and denying summary judgment to Alliance on its claim for declaratory relief. The district court found that the Federal Crop Insurance Act ("FCIA") did not preempt certain general regulatory provisions contained in state insurance law. We affirm.

## I.

Alliance issues crop insurance policies to a number of sugar beet farmers in southern Minnesota. The policies are reinsured by the Federal Crop Insurance Corporation ("FCIC"), a wholly-owned government corporation established within the Department of Agriculture. The policies are regulated by the FCIA. 7 U.S.C. § 1501 *et seq.* A large group of Minnesota sugar beet farmers suffered substantial losses when a series of freezes and thaws damaged sugar beets in 2000. After the losses, the sugar beet farmers submitted claims to Alliance. Alliance declined coverage to the farmers based on the farmers' alleged noncompliance with Alliance's submission requirements. Predictably, the farmers disagreed with Alliance's finding of noncompliance.

The Commissioner initiated a market conduct examination of Alliance to determine whether Alliance complied with Minnesota Statutes Chapter 72A[2] in responding to the growers' claims. Alliance filed a complaint against the Commissioner in district court on August 15, 2002, asserting that Commissioner James C. Bernstein[3] did not have legal authority to undertake the examination because the FCIA alone regulates FCIC crop insurance policies and the FCIA preempts any state law regulating such insurance. Alliance and the Commissioner filed cross motions for summary judgment.

---

[2] This provision is designed to ensure that insurance companies handle their policy holders' claims in a reasonable manner.

[3] Bernstein has since been succeeded as Commissioner by Glenn R. Wilson.

On April 16, 2003, the district court granted the Commissioner's motion for summary judgment and dismissed the case with prejudice. The district court found that under Minnesota law the Commissioner is not precluded from enforcing state regulatory standards designed to ensure that insurance companies handle their policy holders' claims in a reasonable manner. The court determined that under 7 U.S.C. § 1506(l), Congress preempted only those state insurance statutes that are inconsistent with FCIA, and not all state insurance laws, as argued by Alliance. Relying on Minnesota Statute § 60A.031, the court reasoned that the Commissioner is permitted to examine Alliance's insurance affairs, practices, and conditions "as it would any other insurance company doing business in Minnesota. Alliance filed a timely notice of appeal on May 14, 2003.

## II.

Congress enacted the FCIA in 1938 "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502 (1994). Under the original scheme of the FCIA, only the FCIC issued crop insurance policies and processed claims based on those policies. When the FCIA was amended, Congress authorized the FCIC to utilize private insurance companies in providing crop insurance to the nation's farmers. 7 U.S.C. § 1508(a). Currently, the FCIC insures farmers directly and reinsures private companies that insure farmers. *Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Serv., Inc.*, 121 F.3d 630, 634 (11th Cir. 1997).

Alliance, a private insurance company, argues that the Commissioner's examinations designed to investigate Alliance's treatment of Minnesota farmers are expressly preempted by the FCIA and its accompanying regulations. Specifically, Alliance contends that the FCIA comprehensively regulates FCIC crop insurance and directly conflicts with state regulatory procedures. Alliance asserts that the Commissioner's market conduct examination would indisputably "affect or govern"

Alliance's "agreements, contracts, or actions" in violation of the FCIA. In contrast, the Commissioner argues that the FCIA does not preempt state law entirely but only to the extent that state laws are inconsistent with the FCIA and certainly not when a company is acting outside its authority as provided by the FCIA.

In relevant part, the FCIC's regulations provide:

(a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.
(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:
(1) Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;
(2) Tax premiums associated with policies issued hereunder;
(3) Exercise approval authority over policies issued;
(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (*nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act*, the regulations, any contract or agreement authorized by

-4-

the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation); or

(5) Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

The preceding list does not limit the scope or meaning of paragraph (a) of this section.

7 C.F.R. § 400.352 (emphasis added).

In the present case, the Commissioner maintains that in order to determine whether Alliance acted outside of its authority in addressing the Minnesota sugar beet farmers' claims, he must be able to conduct examinations of Alliance's affairs, practices, and conditions pursuant to Minnesota Statute § 60A.031.[4]

The Supremacy Clause[5] enables Congress, in the exercise of its legislative authority, to preempt state law. *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986). To do so, Congress must either expressly state its intention or legislate so comprehensively that no room is left for state legislation in the subject area. *Id*. There are several methods by which courts may discern whether Congress intends to preempt state law when it enacts certain federal legislation.

First, a federal law may expressly preempt a state law. Next, preemption will occur of necessity if a state law and a federal law are in direct conflict. When compliance with both federal and state regulations is a physical impossibility or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

[4] This statute allows the Commissioner to enforce the reasonableness standards identified in Minnesota Statutes Chapter 72A through examinations of insurance companies and "all aspects of the examinee's affairs, practices, and conditions." Minn. Stat. § 60A.031, subd. 2a.

[5] U.S. Const. art. VI, cl. 2.

Congress, then the state law is preempted. Also, congressional intent to preempt may be inferred from enactment of federal laws that are so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. In addition, preemption will be presumed if the subject matter of the legislation concerns a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the objective of the federal law or the duties it imposes reveal the same purpose.

*Heart of America Grain Inspection Serv., Inc. v. Missouri Dept. of Agriculture,* 123 F.3d 1098, 1103 (8th Cir. 1997) (internal quotations and citations omitted). "[Preemption] may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may [preempt] state regulation." *Louisiana Public Serv. Com'n*, 476 U.S. at 369.

The FCIA provides that state law applies to FCIA contracts, with two exceptions: (1) when FCIC contracts provide that state law does not apply or (2) when state law is inconsistent with FCIC contracts. 7 U.S.C. § 1506(l). Neither exception applies in this case.

According to Alliance, when the FCIA regulations standardized crop insurance, they simultaneously compelled exclusive federal jurisdiction. Although an issue of first impression in this circuit, our sister circuits deciding the question agree that the FCIA does not displace state insurance law regulations. *Williams Farmers of Homestead, Inc.*, 121 F.3d at 634 (holding that Congress did not draft "FCIA to expressly preempt state law, nor does the wording of the statute or its legislative history evince an intent to preempt state law"); *Meyer v. Conlon*, 162 F.3d 1264, 1270 (10th Cir. 1998) (reasoning that the FCIA does not preempt state law).

Alliance suggests that the following federal regulatory language preempts state regulatory law:

> (a) No State . . . shall have the authority to promulgate regulations . . . that directly or indirectly affect or govern agreements, contracts, or actions authorized by . . . by the . . . [FCIC].

7 C.F.R. § 400.352. However, the regulation continues:

> Nothing herein is intended to preclude any action on the part of any authorized State regulatory body . . . concerning any actions or inactions on the part of the . . . company whose action or inaction is not authorized or required under the [FCIC] or . . . authorized by the [FCIA].

7 C.F.R. § 400.352. This language "permits lawsuits based on agents' actions not authorized by the FCIA or the FCIC, negating [Alliance's] argument that the regulations interpret the FCIA as wholly preemptive." *Meyer*, 162 F.3d at 1269. We hold that the FCIA did not intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance.

We find no conflict[6] between the FCIA and Minnesota state law authorizing the Commissioner's market conduct examinations. Alliance, relying on 7 C.F.R. § 400.352(a), argues that because the examinations "directly or indirectly affect" the manner in which Alliance handles its claims, the examinations are preempted. Specifically, Alliance contends that the Commissioner's examinations are at odds–an

---

[6] Federal law preempts state law with which it actually "conflicts." Such a conflict exists if either (1) compliance with both the state and federal laws is a physical impossibility or (2) state law stands as an obstacle to the accomplishment of the purposes of Congress. *Boggs v. Boggs*, 520 U.S. 833, 844 (1997).

obstacle–with Congress's purpose in establishing crop insurance uniformly throughout the United States. We find this argument unpersuasive.

Here, the parties concede that, at its present stage, the Commissioner's examination is purely investigatory. To the extent the examinations do not impose any duty or obligation upon Alliance as crop insurers to process claims in a certain way, Alliance may comply with both state and federal law. The Commissioner's proposed examination may well serve a useful purpose and disclose material differences between the two systems. It may even expose substantial potential deficiencies, shortcomings, and unfairness in the claims procedures dictated by the regulations promulgated by the federal corporation. If, in fact, the "FCIC, as always, remains open to suggestions from any person, including State insurance regulatory bodies, on ways to improve the program including changes in policy terms of [sic] conditions," 55 Fed. Reg. 23066-01, 23067(June 6, 1990), one might think that it and the appellants would welcome the Minnesota Commissioner's investigation instead of spending time going to federal court to try to stop it.

Should the Commissioner attempt to impose claims handling duties or obligations upon Alliance in the performance of crop insurance policies, the circumstances would be altered substantially. The district court found that, to the extent the Commissioner discovers violations of Minnesota law authorized or required by FCIA, his authority to regulate Alliance is preempted. We hold likewise. Thus far, the Commissioner has only sought to inquire into the actions of a private insurance company's treatment of Minnesota crop insurance policyholders. We find that the Commissioner's inquiry is not inconsistent with FCIA; therefore, it is not preempted to the extent it is limited in scope and does not stand as an obstacle to the accomplishment of the purpose of the FCIA.

Alliance also argues that the Commissioner's market conduct examinations are improper because the Commissioner seeks to require Alliance to pay the

Commissioner's expenses for conducting the regulatory investigation. The Commissioner urges that it is not the purpose of the examinations to impose duties or obligations. *See* Minn. Stat. § 60A.03, subd. 2 (charging the Commissioner with the duty of enforcing Chapter 72A); Minn. Stat. § 60A.031, subd. 2a (authorizing examinations so Commissioner can fulfill his duty to enforce Chapter 72A). Alliance's concern has merit. Should the Commissioner attempt to require Alliance to pay the cost of the Commissioner's investigation, then the Commissioner might well be imposing the type of individual state obligation that uniform federal legislation is designed to avoid.

We conclude that the district court did not err in finding that the FCIA and regulations promulgated pursuant to it do not wholly preempt regulatory insurance standards contained in Minnesota Statutes Chapter 72A or the Commissioner's jurisdiction under Minnesota Statute § 60A.031 to examine Alliance's insurance affairs, practices, and conditions. However, we, as did the district court, note that the Commissioner must tread carefully in its investigation to "avoid running afoul of the FCIA."

### III.

We affirm the district court's grant of summary judgment in favor of the Commissioner.

COLLOTON, Circuit Judge, dissenting.

The Federal Crop Insurance Corporation (FCIC), acting pursuant to authority delegated to it by Congress in the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1506(p), has adopted a regulation stating that "[n]o State . . . shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions *that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part* unless such authority is specifically authorized by this part or

by the [FCIC]." 7 C.F.R. § 400.352(a) (emphasis added). Because I believe the opinion of the court does not recognize the preemptive force of this broad regulation, I respectfully dissent.

Federal regulations, like federal statutes, may preempt state law, if the regulations are intended to have preemptive effect, and the agency is acting within the scope of authority delegated to it by Congress. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982). Neither the court nor the Commissioner disputes that the FCIC had the authority to promulgate § 400.352(a), or that preemption of the Commissioner's market conduct examinations would be within the scope of the agency's broad delegated authority, if the FCIC so intended. *See* 7 U.S.C. § 1506(k); *Kansas ex rel. Todd v. United States*, 995 F.2d 1505, 1510-11 (10th Cir. 1993); Preemption of State Laws and Regulations, 55 Fed. Reg. 23,066, 23,067 (June 6, 1990) (The FCIC "has consistently interpreted 7 U.S.C. § 1506(k) to allow FCIC to preempt any state insurance rules or regulations regarding crop insurance that may apply to . . . any insurance company with which FCIC has an agreement."). Therefore, whether the regulation preempts the Commissioner's authority to order market conduct examinations of Alliance, insofar as they concern Alliance's participation in the federal crop insurance program, is a question of regulatory intent. *Capital Cities Cable*, 467 U.S. at 700; *Fid. Fed. Sav. & Loan Ass'n*, 458 U.S. at 154.

The plain wording of the FCIC's regulation necessarily contains the best evidence of the agency's preemptive intent. The regulation at issue provides as follows:

> (a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that *directly or indirectly affect or govern agreements, contracts, or actions authorized by this part* unless such authority is specifically authorized by this part or by the Corporation.

(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:

(1) Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;

(2) Tax premiums associated with policies issued hereunder;

(3) Exercise approval authority over policies issued;

(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (*nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation*); or

(5) Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

*The preceding list does not limit the scope or meaning of paragraph (a) of this section.*

7 C.F.R. § 400.352 (2004) (emphasis added).

Alliance argues that the market conduct examinations "directly or indirectly affect or govern agreements, contracts, or actions authorized by" FCIC regulations, and that they are thus preempted by § 400.352(a). The court appears to reject this contention on two grounds. First, the court says that "[t]o the extent the examinations do not impose any duty or obligation upon Alliance as crop insurers to process claims in a certain way, Alliance may comply with both state and federal law." *Ante*, at 8. That Alliance may comply with both state and federal law, however, means only that the Commissioner's regulatory order and examination is not preempted on the basis that it "conflicts" with federal law under one prong of "conflict preemption" analysis. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) ("state law is pre-empted to the extent that it actually conflicts with federal law," such as "where it is impossible for a private party to comply with both state and federal requirements."). This conclusion about conflict preemption does not address whether the Commissioner's authority is *expressly preempted* by § 400.352(a), even though an insurance company might be able to comply with both federal and state law. Of course, Congress not infrequently intends or authorizes preemption of state law that does not actually conflict with federal law in order to ensure uniform regulation or governance. *E.g.*, *Ray v. Atl. Richfield*, 435 U.S. 151, 168 (1978); *Campbell v. Hussey*, 368 U.S. 297, 300-01 (1961); *Northern Natural Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 822-23 (8th Cir. 2004); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948-49 (6th Cir. 2002).

The court also appears to accept the Commissioner's contention that the parenthetical proviso found in § 400.352(b)(4) modifies the preemptive force of § 400.352(a). *Ante*, at 7. Apparently applying a portion of the proviso rather than § 400.352(a), the court holds that the Commissioner's authority to regulate Alliance is preempted only to the extent that any violation of Minnesota law committed by Alliance was "authorized or required by FCIA." *Ante*, at 8. I disagree with this textual analysis.

-12-

The proviso of § 400.352(b)(4) -- "nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation" -- modifies only the example of prohibited action listed in the body of § 400.352(b)(4). The placement of the proviso within a subsection of § 400.352(b) demonstrates that the term "herein" refers to the preceding example, not to the broad statement of preemption in the separate subsection of § 400.352(a). The independent force of § 400.352(a) is underscored by the last sentence of § 400.352(b), which makes clear that "[t]he preceding list *does not limit the scope or meaning* of paragraph (a) of this section." In short, the proviso of § 400.352(b)(4) merely limits the scope of an example in a list which itself does not limit the scope of § 400.352(a). The proviso shows that *the example* in § 400.352(b)(4) does not preclude certain state regulatory action described in the proviso, but any such action is still subject to the overriding requirement of § 400.352(a) that it may not "directly or indirectly affect or govern agreements, contracts, or actions authorized" by FCIC regulations.[7]

---

[7]Not insignificantly, the FCIC has published an amendment to the proviso of § 400.352(b)(4), effective August 30, 2004, that deletes the reference to "any action on the part of any authorized State regulatory body." The new proviso provides only that:

> Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.

General Administrative Regulations, 69 Fed. Reg. 48,652, 48,730 (Aug. 10, 2004) (to be codified at 7 C.F.R. § 400.352(b)(4)). The FCIC commented that it was clarifying

I am left, therefore, with a question that neither the court nor the district court has answered directly: whether the Commissioner's market conduct examinations "directly or indirectly affect or govern agreements, contracts, or actions authorized" by FCIC regulations. The examinations concern the manner in which Alliance has handled claims made under federally-reinsured crop insurance policies sold to sugar beet farmers in Minnesota. Every term of every such policy is mandated by the FCIC's regulations. *See* 7 C.F.R. §§ 457.8, 457.109. As a result, each of the agreements or contracts that is the subject of the Commissioner's examinations is an "agreement" or "contract" authorized by FCIC regulations within the meaning of § 400.352(a).

I also believe that the Commissioner's orders and examinations "directly or indirectly affect or govern" these agreements or contracts. There is no allegation by the Commissioner that Alliance has failed to comply with policies or procedures of the FCIC. The Commissioner's pleadings make clear that the purpose of the examinations is to determine whether Alliance has violated independent provisions of *Minnesota law* relating to the handling of insurance claims. In particular, the Commissioner believes that Alliance may have "fail[ed] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," Minn. Stat. § 72A.20 subd. 12(2), "refus[ed] to pay claims without conducting a reasonable investigation," Minn. Stat. § 72A.20 subd. 12(4), and "fail[ed] to complete its investigation and inform the insured . . . of acceptance or denial of a claim within 30 business days after receipt of notification of [such] claim . . . ." Minn. Stat. § 72A.201, subd. 4(3). The Commissioner also seeks to inquire whether Alliance has "fail[ed] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," Minn. Stat. § 72A.20 subd. 12(3), or "fail[ed] to promptly provide a reasonable explanation of the

the proviso so that "damages, fees and costs are preempted unless FCIC determines the insurance provider, agent, or loss adjusters failed to follow FCIC approved policy or procedure." *Id*. at 48,726.

basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Minn. Stat. § 72A.20 subd. 12(14).

The federally-mandated terms of federally-reinsured crop insurance policies, however, already impose a set of requirements for handling claims. Each policy specifies the "duties" of an insurer in the event of damage or loss. Under the policy terms prescribed by the FCIC, for example, an insurer must pay an insured's loss within 30 days after (1) the insurer and the insured reach an agreement regarding the claim, (2) arbitration and any appeals are completed, or (3) a final judgment regarding the claim is entered. 7 C.F.R. § 457.8 ¶ 14 ("Our Duties"). The policy terms also provide that the insurer must give notice if a claim cannot be paid within 30 days, and they permit insurers to defer loss adjustments "until the amount of loss can be accurately determined." *Id.* The federal regulations prohibit an insurer from paying on a claim unless the insured has complied with all of the federally-mandated terms of the contract that impose duties on the insured. *Id*. §§ 457.7, 457.8 ¶ 14 ("Your Duties").

When the FCIC promulgated § 400.352(a), one of the reasons cited for adoption of such a broad regulation was the frequent occurrence of state agencies requiring changes in federally-approved insurance policies with the result that policyholders living in different States were treated differently. Gen. Admin. Regs., 55 Fed. Reg. at 23,066. The claims-handling duties imposed by the FCIC do not include the requirements set forth in Minnesota law. By imposing new claims-handling duties that the FCIC has not seen fit to include in the federally-mandated policy terms, therefore, the Commissioner would affect or govern agreements or contracts authorized by the FCIC.

The Commissioner also argues that because the examinations are simply an inquiry, the examinations themselves cannot affect "agreements, contracts, or actions

authorized" by the FCIC. Under this view, even if the Commissioner is precluded from taking any regulatory action at the end of the examination (because regulation of Alliance's claims-handling would affect agreements, contracts, or actions authorized by the FCIC), the Commissioner may nonetheless subject Alliance to the examination. This is an unlikely interpretation of the FCIC's intent, and I believe the examinations are better understood as an effort to "indirectly affect *or govern*" the crop insurance policies that underlie this dispute. If, moreover, the market conduct examinations do not technically "affect or govern," because they only gather information (while presumably imposing attendant burdens on the insurer), then they present an example of state regulatory action that is implicitly preempted, because it stands as an "obstacle" to the accomplishment and execution of the federal objective of uniform national crop insurance. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000). Where the only purpose of the market conduct examinations is to establish a basis for potential state regulation that is expressly preempted by § 400.352(a), I think it is implicit in the FCIC's statement of express preemption that such preliminary regulatory activity is also preempted.

For the foregoing reasons, I would reverse the judgment of the district court.

_____