ACCEPTED
07-15-00060-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
8/13/2015 9:48:21 AM
Vivian Long, Clerk

No. 07-15-00060-CV

IN THE SEVENTH COURT OF APPEALS
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
8/12/2015 9:48:21 AM
VIVIAN LONG
CLERK

JODY JAMES FARMS, JV,
Appellant,
v.
THE ALTMAN GROUP, INC.
AND LAURIE DIAZ,
Appellees.

Appeal from the 100th District Court of
Floyd County, Texas
Cause No. 10,422

APPELLEES' BRIEF
August 12, 2105

Respectfully submitted,

FIELD, MANNING, STONE,
HAWTHORNE, AND AYCOCK, P.C.
2112 Indiana Ave.
Lubbock, Texas 79410
Tel: (806) 796-4000
Fax: (806) 792-9148
Anna McKim, SBN 24033381
amckim@lubbocklawfirm.com
J. Paul Manning, SBN 24002521
ATTORNEYS FOR APPELLEES

ORAL ARGUMENT REQUESTED

Table of Contents

**Index of Authorities** .......................................................................................... iii

**Statement of the Case** ......................................................................................... 1

**Oral Argument Request** ...................................................................................... 2

**Issue Presented** .................................................................................................... 3

**Facts** ....................................................................................................................... 3

**Summary of the Argument** ................................................................................... 4

**Argument and Authorities** ................................................................................... 5

   **Issue:** ................................................................................................................. 5

   Whether Altman and Diaz, as nonsignatory insurance agents, can compel
   arbitration of James' claims against them pursuant to the FCIC governed crop
   insurance policy agreement. ................................................................................ 5

   **A. Standard of Review** ..................................................................................... 5

   **B. Mandatory nature of FCIC arbitration** .................................................... 6

   **C. An applicable agreement to arbitrate** ....................................................... 7

      **1. Agency** ................................................................................................. 9

      **2. Equitable estoppel** ............................................................................. 12

      **3. Third-party beneficiary** ..................................................................... 16

   **D. Claims are within scope of arbitration clause** ......................................... 17

   **E. Arbitrator and court acted within authority** ........................................... 21

**Conclusion** ........................................................................................................... 22

**Prayer** .................................................................................................................. 22

**Certificate of Service** .......................................................................................... 23

**Certificate of Compliance** .................................................................................. 23

**Appendix Table of Contents** ............................................................................... 24

# Index of Authorities

## Cases

*Bosscorp, Inc. v. Donegal, Inc.*, 370 S.W.3d 68 (Tex.App.—Houston [14th Dist.] 2012, no pet.)........................................................................................... 17

*Brainard v. State*, 12 S.W.3d 6 (Tex. 1999) ........................................................ 5

*Cantella & Co. v. Goodwin*, 924 S.W.2d 943 (Tex. 1996) ................................. 17

*Chelsea Square Textiles, Inc. v. Bombay Dyeing and Manufacturing Co.*, 189 F.3d 289 (2nd Cir. 1999)...................................................................................... 5

*Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005) ............... 14

*Ellman v. JC Gen. Contractors*, 419 S.W.3d 516 (Tex.App.—El Paso 2013, no pet.) ................................................................................................................. 5

*Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947) ........................... 6

*Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023 (7th Cir. 2002) ................................................................................................................ 15

*Garcia v. Huerta*, 340 S.W.3d 864 (Tex. App.—San Antonio 2011, pet. denied) 11

*Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.), cert. denied, 531 U.S. 1013, 121 S. Ct. 570, 148 L. Ed. 2d 488 (2000) ...........................12, 13

*In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206 (Tex. 2007) .......................11, 15

*In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732 (Tex. 2005)........... 8, 15, 16, 17

*In re Merrill Lynch Trust Co.*, 123 S.W.3d 549 (Tex. App.--San Antonio 2003, orig. proceeding), mand. granted, 235 S.W.3d 217 (Tex. 2007) (orig. proceeding) (per curiam) ...................................................................................8, 9, 11

*In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571 (Tex. 1999) ........................ 5

*In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759 (Tex. 2006) ................................... 11

*In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818 (Tex. App.—San Antonio 2009, orig. proceeding)............................................................................................8, 11

*Leander Cut Stone Co. v. Brazos Masonry, Inc.*, 987 S.W.2d 638 (Tex.App.— Waco 1999, no pet.)........................................................................................ 5

*McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 447 (Tex.App.—Dallas 2001, orig. proceeding) ......................................................... 9

*Merrill Lynch Trust Co. FSB v. Alaniz*, 159 S.W.3d 162 (Tex. App.—Corpus Christi 2004, no pet.) ..................................................................................... 10

*Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302 (Tex. 2006) ........................12, 13, 14

*Nobles v. Rural Community Insurance Services*, 122 F.Supp. 2d 1290 (M.D. Ala. 2000) ......................................................................................................18, 19

*Pritzker v. Merrill Lynch, Inc.*, 7 F.3d 1110 (3d Cir. 1993) ................................. 11

*Rich v. Spartis*, 516 F.3d 75 (2d Cir. 2008) ...................................................... 21

*Schwartz v. Merrill Lynch & Co.*, 2011 U.S. App. LEXIS 23803 (2d Cir. Nov. 30, 2011) ................................................................................................................. 21

*Simon v. Pfizer, Inc.*, 398 F.3d 765 (6th Cir. 2005) ............................................ 15

*South Texas Water Authority v. Lomas*, 223 S.W.3d 304 (Tex. 2007).................. 16

*Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) ............................ 21

*Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222 (Tex. 2014) ......................... 20

## Statutes

7 C.F.R. §400.352 (Lexis 2015)........................................................................ 6

7 U.S.C. §1502 (Lexis 2015) ........................................................................... 6

7 U.S.C. §1506 (Lexis 2015) .........................................................................6, 7

7 U.S.C. §1507 (Lexis 2015) .........................................................................6, 16

## Rules

TEX. CIV. PRAC. & REM. CODE § 171.021 (Lexis 2015)......................................... 8

TO THE HONORABLE COURT:

Appellees THE ALTMAN GROUP, INC., and LAURIE DIAZ present this their response to the brief of Appellant JODY JAMES FARMS, JV, and request the Court to affirm the Trial Court's decisions to compel arbitration and enforce the arbitration award.

## Statement of the Case

In December 2012, James filed an action in state court alleging fraud and negligent misrepresentation against his crop insurer, Rain and Hall, LLC. The claims were sent to arbitration in a proceeding styled *In the Matter of the Arbitration between: Jody James Farm, JV vs. Rain and Hail, LLC*, Case No. 71430E003911 before the American Arbitration Association, wherein the arbitrator found James was not entitled to recover under the policy of insurance because his alleged notice of a claim to Altman and Diaz was not sufficient and not in compliance with the Policy. The arbitrator further found James was not entitled to recover under the Policy, even if notice had been timely, because he commingled performing and non-performing crops. CR 88-90; App. Tab 2.

Notwithstanding the arbitrator's determination, James subsequently filed suit against Altman and Diaz for breach of fiduciary duty and violations of the Texas Deceptive Trade Practice Act. CR 3-6. Altman and Diaz filed a motion to compel

arbitration. CR 9-17. James filed a response denying an agreement to arbitrate existed. CR Supp. 4-76. The Trial Court granted the motion to compel arbitration, and after another round of reconsideration, the matter proceeded to arbitration. CR 27-36, 41.

In October 2014, Arbitrator Harper Estes rendered an Award of Arbitrator stating James did not establish a right of recovery and determining James should take nothing. CR 92-94; App. Tab 1. The arbitrator indicated the findings of the original arbitrator were consistent with his findings precluding recovery. CR 94.

Altman and Diaz then filed a petition to confirm and enforce the final arbitration award, which the Trial Court granted on January 20, 2015, over objection from James. CR 42-54, 57-73, 125-26.

## Oral Argument Request

Appellees do not anticipate oral argument is necessary in this matter. However, if Appellant's request for oral argument is granted, Appellees wish to participate.

## Issue Presented

Whether Altman and Diaz, as nonsignatory insurance agents, can compel arbitration of James' claims against them pursuant to the FCIC governed crop insurance policy agreement.

## Facts

Appellees do not oppose the facts as represented by Appellant with the exception of two statements. First, Appellant represents "Diaz was notified by telephone of the loss." (Appellant Brief, p. 3). Both the arbitrator in James' original suit against Rain and Hail (CR 88-90; App. Tab 2) and the arbitrator in this matter (CR 92-94; App. Tab 1) determined there was not sufficient evidence to find a claim had been affirmatively made in a timely manner.

Second, Appellant asserts Rain and Hail denied James' claim because it was untimely submitted. (Appellant Brief, p. 4, citing CR Supp. 64-68.) While this was one reason for denial of the claim, Rain and Hail also outlined denial based upon improper commingling of performing and non-performing farm crops without proper measurements and a belief that James intentionally misrepresented planting dates, both of which led to the proper denial of claims pursuant to both arbitrators (CR Supp. 66-67; CR 93-94 (App. Tab 1); CR 89-90 (App. Tab 2).

## Summary of the Argument

James' claims result from a disagreement with Rain and Hail regarding the denial of certain indemnity payments under the subject insurance policy, which, prior to bringing suit against Altman and Diaz, had already been litigated/arbitrated. The original arbitration included a finding that, even if the notices for which James now claims damages had been timely, James' recovery would have still been precluded because of commingled crops and faulty documentation.

James' ill-fated attempt to recover from Altman and Diaz is subject to the mandatory arbitration provision within the FCIC Policy because Altman and Diaz maintain agency, equitable estoppel, and/or third-party beneficiary theory status.

The claim is within the scope of the arbitration clause because it involves a factual determination as set forth within the Policy. Because the determination was properly within the Policy scope, the arbitrator's determination and subsequent trial court judgment were within the authority of each. The trial court's determinations should be affirmed.

## Argument and Authorities

### Issue:

Whether Altman and Diaz, as nonsignatory insurance agents, can compel arbitration of James' claims against them pursuant to the FCIC governed crop insurance policy agreement.

### A. Standard of Review

A court determining if arbitration should be compelled under either federal or Texas law must determine (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of the agreement encompasses the asserted claims. See *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Manufacturing Co.*, 189 F.3d 289, 294 (2nd Cir. 1999) (FAA); *Leander Cut Stone Co. v. Brazos Masonry, Inc.*, 987 S.W.2d 638, 640 (Tex.App.—Waco 1999, no pet.) (FAA); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (state law).

Review of a trial court's decision to grant the motion to compel arbitration is under an abuse of discretion standard. *Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 520 (Tex.App.—El Paso 2013, no pet.). The Court must defer to the trial court's factual determinations if they are supported by the evidence and must review the legal determinations *de novo*. *Brainard v. State*, 12 S.W.3d 6, 30 (Tex. 1999).

## B. Mandatory nature of FCIC arbitration

The insurance policy at issue is a Federal Crop Insurance Policy regulated by the Federal Crop Insurance Act (FCIA). CR 25. The Federal Crop Insurance Corporation (FCIC) was created in 1938 by the FCIA. 7 U.S.C. § 1501-20 (Lexis 2015). The FCIC was created for the purpose of providing national welfare "by improving the economic stability of agriculture through a sound system of crop insurance…" 7 U.S.C. §1502 (Lexis 2015).

Section 1516 of the FCIA authorizes the Secretary of Agriculture and the FCIC to issue such regulations as may be necessary to carry out the provisions of the Chapter. These regulations are binding on "all who [seek] to come within the FCIA." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947). Agents are parties contemplated by the Act. 7 U.S.C. §1507(c).

The codified regulations specifically set forth the terms of these insurance policies. The actual provisions and terms of the policies are standardized and approved by the FCIC. The terms and conditions preempt any contrary state laws that would apply to other insurance contracts normally issued by private insurance companies. See 7 U.S.C. §1506(l) (Lexis 2015); 7 C.F.R. §400.352 (Lexis 2015). Congress specifically provided:

> [S]tate and local laws or rules shall not apply to contracts or agreement of the [FCIC] or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements.

7 U.S.C. §1506(k).

One of the mandated provisions of the FCIC insurance policies is the arbitration provision. The terms of the Policy are set forth in the regulations promulgated by the Risk Management Agency (RMA), which administers the federal crop insurance program and is regulated, reinsured, and subsidized by the FCIC. The FCIC added the arbitration requirement to the policy provisions in 1994. In summarizing the changes to the Common Crop Insurance Regulations, the FCIC noted, "The arbitration provisions are amended to apply to *all disagreements on factual determinations* and be in accordance with the Rules of the American Arbitration Association." *Common Crop Insurance Regulations; Regulations for the 1994 and Subsequent Crop Years*, 59 FR 42751 (emphasis added). Thus, the language calling for arbitration when "you and we fail to agree on any *determination* made by us" is a reflection of federal policy *expanding* the scope of the arbitration provision in this case. CR Supp. 44.

## C. An applicable agreement to arbitrate

This federally mandated and contractually agreed arbitration provision is binding between James and his insurance agents. A court must order arbitration upon receipt of an application showing 1) an agreement to arbitrate, and 2) the opposing party's refusal to arbitrate. TEX. CIV. PRAC. & REM. CODE § 171.021(a)(1) (Lexis

2015). Success in meeting the element of a valid and enforceable arbitration agreement requires proof that the party seeking to compel arbitration was a party to the agreement or had the right to enforce the arbitration agreement. *In re Merrill Lynch Trust Co.*, 123 S.W.3d 549, 554-555 (Tex. App.--San Antonio 2003, orig. proceeding), mand. granted, 235 S.W.3d 217 (Tex. 2007) (orig. proceeding) (per curiam).

Federal courts have recognized six theories based on common principles of contract and agency law that may bind nonsignatories to arbitration agreements:

- incorporation by reference;
- assumption;
- agency;
- alter ego;
- equitable estoppel; and
- third-party beneficiary.

*In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 824 (Tex. App.—San Antonio 2009, orig. proceeding). From this list, the theories of agency, equitable estoppel, and third-party beneficiary are relevant to this Court's considerations and a finding of any one is sufficient. Based upon these theories, the Trial Court and arbitrator properly determined Altman and Diaz were nonsignatories subject to the arbitration agreement.

### 1. Agency

Though not named parties within the Policy, Altman and Diaz had agent obligations related to both James and Rain and Hail under the Policy and the FCIA. 7 U.S.C. §§1701-1724. However, James attempts to narrow the scope of the arbitration provision by claiming inapplicability because Altman and Diaz did not have authority to "make a determination." (Appellant Brief, p. 9).

Under ordinary contract and agency principles, nonsignatories of an arbitration agreement may be bound by the agreement and entitled to enforce it. *In re Merrill,* 123 S.W.3d at 557. When the principal is bound by a valid arbitration agreement, "its agents, employees, and representatives are covered by that agreement." *McMillan v. Computer Translation Sys. & Support, Inc*., 66 S.W.3d 447, 481 (Tex.App.—Dallas 2001, orig. proceeding). There is ample authority under which Altman and Diaz, as agents of the insurer, Rain and Hail, LLC, can enforce the terms of the subject arbitration agreement.

The Policy initially makes reference to an "insurance agent" within the first paragraph, which reads in relevant part, "The provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours…" CR 25. The Policy also makes specific mention of the "insurance agent" under a provision entitled "Your Duties:"

> All notices required in this section that must be received by us within 72 hours may be made by telephone or in person to *your crop insurance agent* but must be confirmed in writing within 15 days."

9

CR Supp 25, 38-39. "Insurance agent" is not a defined term under the Policy, but James readily identifies Altman and Diaz as his agents throughout his pleadings and makes no argument otherwise.

This provision does two things. First, it gives James an obligation to utilize his insurance agents in an agency capacity with Rain and Hail to receive his claim. If a notice must be received by "us" (defined as the insurance company, CR 25), then James may provide the notice by telephone or in person "to your crop insurance agent" (Altman and Diaz) and confirm in writing within 15 days. This section identifies Altman and Diaz as having obligations to act as agents of Rain and Hail with regard to receipt of claims from the insured.

Second, it identifies an agency capacity between James and Altman and Diaz. "Your crop insurance agent" identifies the relationship between James and his agent, with incumbent duties to take information from James and convey it to Rain and Hail on his behalf.

Here, it is clear from the contractual provisions that Altman and Diaz were obligated to perform certain reporting services with the potential claim. Both the interests of Rain & Hail and those of James were predicated upon the reporting actions of Altman and Diaz as per the contract. See *Merrill Lynch Trust Co. FSB v. Alaniz*, 159 S.W.3d 162, 169 (Tex. App.—Corpus Christi 2004, no pet.).

Courts have consistently recognized the ability of nonsignatory agents of signatories to arbitration agreements to invoke arbitration.

- *In re Wells Fargo Bank, N.A.,* 300 S.W.3d 818, 825 (Tex. App.—San Antonio 2009, orig. proceeding) – The nonsignatories were agents of Wells Fargo and their allegedly wrongful acts related to their behavior as agents.

- *In re Kaplan Higher Educ. Corp*., 235 S.W.3d 206, 209 (Tex. 2007) – Almost every contract claim against a corporation could be recast as a fraudulent inducement claim against its agents, so a contracting party should not be able to avoid unfavorable clauses by suing the party's agent.

-  *In re Vesta Ins. Group, Inc*., 192 S.W.3d 759, 763 (Tex. 2006) – The trial court should have compelled mediation when every defendant was a current or former owner, officer, agent or affiliate of the entity with whom he had agreed to arbitrate such disputes.

- *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 556 (Tex.App.—San Antonio 2003, orig. proceeding), *mand. granted*, 235 S.W.3d 217 (Tex. 2007) (orig. proceeding) – "The scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable." (citing *Pritzker v. Merrill Lynch, Inc*., 7 F.3d 1110, 1121 (3d Cir. 1993)).

- *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied) – Garcia was an agent of Wells Fargo and the claims against Garcia related to his behavior as Wells Fargo's agent, so Garcia was entitled to enforce the arbitration agreement as an agent of Wells Fargo.

As with these cases, for the reasons set forth above, Altman and Diaz have shown an agency relationship that affords them the opportunity to compel arbitration.

James also attempts to thwart the application of the arbitration provision to this agency relationship because "[t]he arbitration clause specifically and unambiguously covered only 'any determination made by us,' with 'us' being defined by the Policy as 'the insurance company providing insurance.'" (Appellant Brief, p. 9, CR Supp. 25, 44). James provides no case law to support this proposition for the purpose of thwarting an agency determination.  Case law and the federal mandate of arbitration in FCIC matters set forth above do not support James' claim for lack of applicability to the agency theory.


## 2.  Equitable estoppel

James undertakes to avoid application of the equitable estoppel theory by asserting he did not seek a "direct benefit" from Altman and Diaz under the policy. He does so because a party that seeks a direct benefit under a contract cannot deny that the arbitration clause applies to a non-signatory. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006). If he can twist his claims into an "independent claim," he asserts he can avoid the arbitration clause (Appellant's Brief, p. 9).

The Texas Supreme Court explained the equitable application of estoppel to arbitration agreements with a recitation from *Grigson v. Creative Artists Agency,*

*L.L.C.*, in which the United States Court of Appeals for the Fifth Circuit quoted an

Elevnth Circuit decision in *MS Dealer Services Corp. v. Franklin*.

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.
>
>> •First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.
>>
>> •Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.
>
> Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305-306 (Tex. 2006), citing *Grigson*

*v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.), cert. denied, 531

U.S. 1013, 121 S. Ct. 570, 148 L. Ed. 2d 488 (2000) (quoting *M S Dealer Serv. Corp.*

*v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal citations and quotation

marks omitted)) (added emphasis omitted and reformatting added). *Id*.

The first circumstance described in *Meyer* is applicable here because, absent

the Policy contract, James has no claim against Altman and Diaz. If the Policy did

not exist, James would have no claim. If the Policy did not exist, James would have had no responsibility to timely report his loss to Altman and Diaz. If the Policy did not exist, Altman and Diaz would have no obligation to receive the notice of loss from James and convey it on to Rain and Hail. If the Policy did not exist, James would have no damages for denial of the claims. James' entire suit relies upon the existence of this Policy. The claims are all tied to the written agreement, so arbitration is appropriate.

The second circumstance described in *Meyer* is also applicable here because James has alleged misconduct on both Rain and Hail (a signatory to the contract) and Altman and Diaz (nonsignatories to the contract). *Id.*

James' attempt to creatively plead this matter around the equitable estoppel doctrine resulted in a claim for breach of fiduciary duty for failure to timely submit the crop loss claim to Rain and Hail. CR 4. Notably, the arbitrator determined no fiduciary relationship existed and, if one did exist, it was not breached (CR 93).

Texas and federal courts have often been confronted with plaintiffs who attempt to creatively recast their claims to avoid certain legal consequences. For example, the Texas Supreme Court has long held that a party cannot avoid the requirements of the Medical Liability Act through artful pleading or recasting of claims. See e.g. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005).

The Court addressed a similar attempt to avoid arbitration in *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007). In Kaplan, a group of students sought to avoid the terms of an arbitration clause by asserting their claims against Kaplan as "fraudulent inducement." The Court observed "almost every contract claim against a corporation could be recast as a fraudulent inducement claim against the agents or employees who took part in the negotiations preceding it." *Id.*, at 209.

Other federal circuit and Texas courts have reached a similar conclusion. A party cannot avoid arbitration by renaming the claims to appear facially outside the scope of the arbitration agreement. See, *Simon v. Pfizer, Inc.*, 398 F.3d 765, 776 (6th Cir. 2005); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005); *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1030 (7th Cir. 2002). In each of these cases, the court looked to the underlying facts to determine whether the essence of the plaintiff's claims fell within the scope of the arbitration clause.

Ultimately, James disputes whether it should have received payment under the policy coverage as previously denied by an arbitrator. CR 4-5. The arbitrator found that "[t]he Parties acknowledged that their conduct was controlled by contract." CR 93. Therefore, this matter falls within the terms of the arbitration agreement, and arbitration was properly compelled.

### 3. Third-party beneficiary

Third party beneficiaries can enforce an arbitration agreement even though they are not parties to the agreement. *In re Kellogg & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). James alleges Altman and Diaz are, at best, "incidental third-party-beneficiaries. (Appellant Brief, p. 12).

To the contrary, the FCIA specifically provides insurance agents are intended beneficiaries of FCIC Policies and compels the Board to:

> encourage the sale of Federal crop insurance through licensed private insurance agents and brokers and give the insured the right to renew such insurance for successive terms through such agents and brokers, in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect

7 USCS § 1507(c). By its nature, the FCIC Policy seeks to and directly, in fact, does benefit Altman and Diaz, as required by *South Texas Water Authority v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). They are not incidental third party beneficiaries. A specifically stated intent of the FCIA was to provide compensation to agents and brokers, and James and Rain and Hail became participants in that intent when they bound themselves to an FCIC Policy.

### D. Claims are within scope of arbitration clause

James further asserts that, even if there was an agreement to arbitrate, "the trial court erred in compelling arbitration because James' claims arose outside the scope of the arbitration clause." (Appellant's Brief, p. 13). Whether a claim is within the scope of the arbitration clause is reviewed de novo. *Bosscorp, Inc. v. Donegal, Inc.*, 370 S.W.3d 68, 75-76 (Tex.App.—Houston [14th Dist.] 2012, no pet.). However, disputes concerning the scope of an arbitration agreement are generally resolved in favor of arbitration. *In re Kellogg & Root, Inc.*, 166 S.W.3d at 737; *In re FirstMerit Bank*, 52 S.W.3d at 753; *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944, (Tex. 1996).

Section 20(a) states in relevant part:

> If you and we fail to agree on any determination made by us …, the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association…

Supp. CR 44. "Determination" is not specifically defined within the Policy, but clearly the dispute at hand involves a disagreement over the determination to decline the claim based, in part, on James' untimely notice of the loss which he blames on Altman and Diaz. As set forth above, the Policy incorporates Altman and Diaz as agents on behalf of the named parties to the Policy, requiring a role in this factual determination. While there is a factual dispute as to whether any obligation arose,

the determination made by Rain and Hail was based in part on alleged action/inaction by Altman and Diaz as required under the Policy.

As a result, we have a question of whether the loss was covered by the Policy. The ultimate determination was the responsibility of Rain and Hail, but it involved factual determinations of timeliness of the claim made by James, the responsibility for failure of which he chose to attempt to punt to Altman and Diaz.

In *Nobles*, an Alabama federal district court analyzed the provisions of the FCIA and the Code of Federal Regulations and determined that, as a matter of law, an aggrieved insured must submit all disputes arising from factual determinations to binding arbitration and that the completion of arbitration proceedings is a condition precedent to bringing any legal action against the insurance company. *Nobles v. Rural Community Insurance Services*, 122 F.Supp. 2d 1290, 1296 (M.D. Ala. 2000)

This matter, like the instant suit, involved farmers' actions for alleged misrepresentations and actions of an agent. The causes of action asserted by the plaintiffs in *Nobles* are strikingly similar to those claims asserted by James herein, e.g., breach of contract, misrepresentation, suppression, bad faith, negligent and wanton distribution of information via the agency, and negligent and wanton supervision of the agents. The court concluded the producers agreed to arbitrate *any* factual determination arising out of their FCIA crop policy, and the agreement was enforceable as a matter of public policy. *Id.*, 1301.

The court in *Nobles* relied in part on the provisions under the rules and regulations of the FCIA that the insured can only bring a legal action against the insurance company after submitting disputes to binding arbitration, citing 7 C.F.R. §457.8, ¶20(a). The language in the current regulations applicable to this suit are even stronger than those at issue in *Nobles*. Section 407.9 paragraph 23(d)(5) expressly provides, "if you fail to initiate arbitration in accordance with §23(d)(5)(i) and complete the process, you will not be able to resolved the dispute through judicial review." 7 CFR 407.9

The *Nobles* court further observed that, pursuant to the arbitration provision, "the insured may not bring legal action against the insurer 'unless [the insured has] complied with all of the policy provision.' This command would be meaningless if it allowed plaintiffs to file suit without first complying with the provisions requiring arbitration of factual disputes." *Nobles*, 122 F. Supp.2d at 1296.

Even faced with the argument that some of the claims were not subject to arbitration, the *Nobles* court stayed the federal court proceedings and held the completion of the arbitration was mandatory and the arbitrator's findings and conclusions would be given preclusive effect in any subsequent court proceedings, all as required by the FCIA and the FAA. *Id*., at 1296. The *Nobles* court found the arbitration provisions of the federal crop insurance policy were mandatory, and that

the plaintiff was required to submit to binding arbitration regarding the factual question of whether the loss was covered by the policy. *Id*., at 1301.

Despite James' attempt to thwart the arbitration agreement, this Court should reach a similar result. The crux of James' complaint is that Rain and Hail determined refusal of an indemnity payment resulting from some alleged failure of Altman and Diaz to make a claim under the policy on his behalf. CR 4-5. The dispute is subject to the arbitration provisions.

James further seeks to attack the scope with reference to FCIC determination and potentially improper limitations. The inapplicability of the FCIC determination regarding policy and procedure interpretation, etc., does not limit the scope of arbitrability. It merely gives guidance with regard to certain disagreements.

James also tacks on an argument that the arbitration should be deemed outside the scope of the agreement because of limitations issues set forth in the Policy. However, the Texas Supreme Court has determined that inappropriate limitations are not a grounds to avoid arbitration. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 230-31 (Tex. 2014).

The factual determinations of timeliness of notice of a claim were clearly disputes applicable to the arbitration provision and were properly submitted within the arbitration process.

## E. Arbitrator and court acted within authority

James' only attack on the arbitrator's award and resulting judgment is related to scope of authority under the arbitration agreement. As set forth above and incorporated here, the arbitrator did not exceed the scope of the agreement. With no other argument attacking the arbitration, the judgment was within the discretion of the Trial Court.

The Federal Arbitration Act "creates a strong presumption in favor of enforcing arbitration awards and has gone so far as to say that courts have an extremely limited role in reviewing arbitration awards. *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (citation and internal quotations omitted). "[A]rbitration . . . determinations are generally accorded great deference under the FAA" and "[j]udicial review of arbitration awards is necessarily narrowly limited." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997). A Court may set aside an arbitration award under the Act only upon a finding that certain statutory or judicial grounds are present. See *Schwartz v. Merrill Lynch & Co.*, 2011 U.S. App. LEXIS 23803, at *17-18 (2d Cir. Nov. 30, 2011). James makes no such showing, so judgment was proper.

## Conclusion

This appeal marks the fifth time James has attempted his arguments to avoid arbitration. They were first presented to the Trial Court prior to its determination to compel arbitration. CR Supp. 4-76. They were re-urged in a motion for reconsideration of that determination. CR 27-36. They were presented to and denied by the arbitrator. CR 100-123. And they were reasserted in response to Altman and Diaz's petition to confirm the arbitration award. CR 75-123. The arguments are the same, and the result should be, as well.

## Prayer

Appellees, THE ALTMAN GROUP, INC., AND LAURIE DIAZ, pray this Court uphold the trial court's decisions to compel arbitration and enforce the arbitration agreement.

Respectfully submitted,

 /S/ANNA MCKIM
FIELD, MANNING, STONE,
HAWTHORNE, AND AYCOCK, P.C.
2112 Indiana Ave.
Lubbock, Texas 79410
Tel: (806) 796-4000
Fax: (806) 792-9148
Anna McKim, SBN 24033381
amckim@lubbocklawfirm.com
J. Paul Manning, SBN 24002521
ATTORNEYS FOR APPELLEES

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served via the Court's Electronic Filing System on this 12th day of August, 2015, to counsel for Appellan, Mr. Jody Jenkins, JENKINS, WAGNON & YOUNG, P.C.

/s/ Anna McKim
Anna McKim

## Certificate of Compliance

I hereby certify that the word count for relevant portions of Appellees' Brief is less than 4500 words.

/s/ Anna McKim
Anna McKim

# Appendix Table of Contents

Tab 1   October 2014 Award of Arbitrator

Tab 2   April 2012 Award of Arbitrator

Tab 3   7 C.F.R. §400.352 (Lexis 2015)

Tab 4   7 U.S.C. §1502 (Lexis 2015)

Tab 5   7 U.S.C. §1506 (Lexis 2015)

Tab 6   7 U.S.C. §1507 (Lexis 2015)

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Case Number: 71-20-1400-0104

Jody James Farms JV

      Claimant,

-vs-

The Altman Group, Inc.

      Respondent.

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby AWARD as follows:

After consideration of the evidence and argument of counsel, this Arbitrator holds that Claimant has not established a right of recovery by a preponderance of the evidence.

It is therefore ordered that Claimant take nothing for its claims against Respondent.

The administrative fees and expenses of the American Arbitration Association totaling $1,275.00, and the compensation and expenses of the Arbitrator totaling $979.92 shall be borne as incurred.

In accordance with the arbitration clause, the Arbitrator provides the following required information:

Issues in Dispute

1. The Claimant brings forth claims of breach of fiduciary duty, violation of the Texas Deceptive Trade Practices Act and negligence, centering around a factual dispute as to whether or not Claimant made a verbal claim for crop loss which Respondent should have timely reported to the insurer.

2. Respondent contends that all findings from a prior arbitration between Claimant and the insurance company are binding, that no duty existed or was violated and there was no causal connection to the damages alleged.

1

Case No: 71-20-1400-0104

EXHIBIT

tabbies

92  7

## Factual Findings

3.     No evidence was presented as to the existence of a fiduciary duty between Claimant and Respondent.

4.     The Parties acknowledged that their conduct was controlled by contract.

5.     There was limited testimony as to prior conduct in terms of how a claim is presented; however, in the instant case, there was no relationship of trust and confidence established. Jody James acknowledged that his communications to Respondent were often made in anger and laced with profanity. Moreover, Jody James acknowledged seeking advice from another insurance agent indicating his lack of trust or confidence in Respondent.

6.     Even had a fiduciary relationship existed, there is no evidence of how it was breached, but at most, evidence of claimed negligence.

7.     There was no evidence of any false or misleading act, again, at most a claim of alleged negligence.

8.     All representations discussed in testimony (existence of coverage, reasons for claim denial) are found to be true.

9.     No witness testified that a representation was made that the claim, which turned out to be time barred, had been filed or made by Respondent on behalf of Claimant. Indeed, the only evidence as to a representation as to any claim was that Respondent's representative, Laurie Diaz, told Jody James that the claim was late.

10.     Respondent was granted a hearing amendment to allege claims of negligence stemming from a purported verbal claim for crop loss presented by Claimant to Respondent's agent, Laurie Diaz.

11.     The evidence of a verbal claim being made was not sufficient to find a claim had been affirmatively made in a timely manner. Claimant, Jody James, testified that his conversations with Respondent's representative, Laurie Diaz, were that he "probably" or "might" have a claim. Claimant's corroborating witness, Mary Ann Thurman, testified that she overheard him to say only, "I think I might have a loss."

12.     Respondent acknowledged that claims are often made verbally and followed up with written notice via the insurer's software program; nevertheless, making a verbal claim in clear and understandable fashion remains the responsibility of Claimant under the policy of insurance in question.

13.     Claimant's representative, Jody James, when speaking of Respondent's representative, Laurie Diaz, testified, "I guess she misunderstood or something." The evidence establishes a failure on the part of Claimant to present a timely claim in a manner which a reasonably prudent person under the same or similar circumstances would understand or believe a claim was being submitted.

2

Case No:  71-20-1400-0104

93

14. This Arbitrator further finds no proximate or producing cause of damages as the evidence is undisputed that the crop for which a loss is claimed, was co-mingled with crops from other units, and perhaps even other entities. The evidence is further undisputed that Claimant's crop, when considered as a single unit, did not result in any loss.

## Determinations

15. The existence or non-existence of a fiduciary duty is a matter of law to be determined by the Arbitrator.

16. None existed in this instance as there was no special relationship established.

17. No liability would have resulted, even if a duty had been established and breached, as any such breach did not cause the damage for which a claim is made.

18. The Texas Deceptive Trade Practices Act prohibits false, misleading or deceptive practices and such must be established by a preponderance of the evidence for recovery of damages. A claim for negligence in purportedly failing to submit a claim does not meet any criteria under the Act.

19. The acts purported to violate the Act must be a producing cause of damage for which a claim is made and such was not the case in this instance.

20. Recovery under a theory of negligence requires proof by a preponderance of the evidence that the party complained of failed to act as a reasonably prudent person under the same or similar circumstances and that such failure was a proximate cause of the damages alleged. Claimant did not prove these elements by a preponderance of the evidence.

21. The findings of this Arbitrator are consistent with the findings in the prior arbitration; therefore, it is not necessary to determine whether or not such findings are binding here.

22. This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Signed this _____9th_____ day of October, 2014.

_____
Harper Estes, Arbitrator

3

Case No: 71-20-1400-0104

# AMERICAN ARBITRATION ASSOCIATION

## In the Matter of the Arbitration between:

**JODY JAMES FARMS, JV.**
  **Claimant**

**Vs.**                                         Case No: 71 430 E 00391 11

**RAIN AND HAIL LLC.**
  **Respondent**

## AWARD

After consideration of the evidence presented, this Arbitrator holds that the Claimant has not established, by a preponderance of the evidence, a right of recovery. Therefore, the holding of this Arbitrator is that Claimant shall take nothing by his claim and that each party is responsible for its own share of AAA administrative expenses and the Arbitrator's fee.

The threshold question is whether Jody James Farms timely presented notice of its claim in accordance with the provisions of the crop insurance policy in question. There is no evidence that Jody James Farms gave any written notice of its claim prior to the claim reported deadline. However, it claims that it provided oral notice of its claim.

The relevant portions of the policy provide that:

15. **Duties in the Event of Damages, Loss, Abandonment, Destruction, or alternative Use of Crop or Acreage.**

Your Duties –

(a)   In case of damage to any insured crop you must:

   2.   Give us notice within 72 hours of your initial discovery of damage (but no later than 15 days after the end of the insurance period), by unit, for each insured crop;

         ***

(g)   All notices required in this section that must be received by us within 72 hours may be made by telephone or in person to your crop insurance agent but must be confirmed in writing within 15 days.

Failure to comply with the required timeline for providing notice of a claim bars the insured from recovering under the Federal Crop Insurance Policy. *See, e.g. Felder v. Federal Crop Ins. Corp.,* 146 F.2d 638 (4th Cir. 1944).

EXHIBIT
88  3

The general consensus is that a notice of a claim must provide enough information for the insurer to begin its investigation of the circumstances and to enable it to formulate an intelligent estimate of its rights and liabilities before it is obliged to pay. **Couch, On Insurance 3d** §189:5. Notice provisions are geared towards protecting the insurer's interests. **Couch, On Insurance 3d** §186.14. Courts therefore generally focus on whether the initial notice was adequate to provide the insurer:

1)    Notice of the potential liability under the policy.

2)    Notice of sufficient facts for an insurer to begin its investigation and discovery of all facts relevant to its potential liability under the policy.

**Couch, On Insurance 3d** §189:5 *citing, e.g., First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland*, 928 P.2d . 298 (Okla. 1996).

Therefore the oral notice of a claim includes more than simply mentioning to an agent that the insured may have sustained crop damage. The notice of an insurance claim should logically contain the following elements by unit for each insured crop:

1.    The Insured is making a claim;

2.    The nature of the claim;

3.    The date(s) of occurrence giving rise to the claim; and

4.    The nature and extent of the claimed damage, including the crop and its location.

Under the terms of the policy, this oral notice must then be confirmed in writing. In support of its position that it gave oral notice of its claim, Jody James Farms submitted the testimony of Jody James and Mary Ann Thurmond, an employee of Jody James Farms.

According to his testimony, Jody James stated that he was talking to his insurance agent about another issue when he mentioned a crop loss claim. Under cross-examination, Jody James acknowledged that he was using abusive language, and that also that the focus of the conversation was on an issue other than the presentation of the crop failure claim.

Claimant's evidence was sketchy as to when Mr. James supposedly orally mentioned a crop failure. Be that as it may, his testimony described a statement which did not rise to the level of a notice of claim. Mr. James never testified that his oral presentation of his claim included all of the elements listed above. Even if the oral mention of a crop failure occurred at a time when the presentation of a claim would have been timely, there was no evidence of the required subsequent written confirmation within 15 days of the oral statement.

Mr. James also presented the testimony of Mary Ann Thurmond, an employee of Jody James Farms, in support of Mr. James' position that he had made an oral notice of his claim. Ms. Thurmond never testified that she orally presented all of the elements of the notice nor did she testify that Mr. James orally presented all of the elements of the notice. Ms. Thurmond's demeanor, coupled with the extensive testimony that Mr. James engaged in abusive language and conduct, lead this Arbitrator to severely discount the credibility of Ms. Thurmond's testimony.

Respondent presented evidence relating to its contention that Mr. James never timely presented a claim for crop failure. In support of its position, it presented the testimony of Laurie Diaz, an employee of The Altman Group, Inc., the agent of the Respondent. Ms. Diaz presented handwritten notes that she testified that she took relating to all of her conversations with Mr. James. However, the notes appear to be pristine with no mark-outs, inter-lineation or any other indication that the notes were made contemporaneously with the telephone conversation reflected in the notes. Even though Ms. Diaz testified that the notes were made contemporaneously, the physical characteristics of the notes are consistent with them being formulated after the fact. Also, Ms. Diaz testified that she does not take claim notes relating to all telephone conversations that she has with all insureds. As a result, this Arbitrator severely discounted the credibility of Ms. Diaz's testimony.

The Respondent also presented the testimony of Ms. Regina Adams who was an employee of Assiter Insurance Agency, LLC, who is not associated with the Respondent. She was an insurance agent working with Mr. James on other crop insurance. She kept computerized notes of her conversations with Mr. James. However, her notes, even though kept on the computer, appear to be contemporaneous and spontaneous. Furthermore, Ms. Adams is not directly affiliated with either the Claimant or the Respondent. As a result, this arbitrator finds the testimony of Ms. Adams credible.

Ms. Adams testimony and her claim notes establish that the first mention of any claim to her was made by Mr. James on January 26, 2011. This is well after the claim notice deadline of no "later than 15 days after the end of the insurance period" on December 10, 2010.

The evidence also reflects that Mr. James did not attempt to segregate grain from his performing units from the grain harvested from the crop in question. This, in the mind of the Arbitrator, is further evidence that Mr. James was not presenting notice of a claim in his telephone conversation. Had he believed that he was presenting a claim, it would have been expected that he would have segregated the crop gleaned from the non-performing farm from crops gleaned from his farms where a claim was not being made.

Furthermore, even had Mr. James timely presented a claim, he did not state a presentable loss because he comingled crops from the performing and non-performing farms, thereby resulting in all of the farms being considered as one unit. When considering the performing and non-performing farms as one unit, there is no loss.

Any other issues raised in this arbitration are not reached because of the rulings set forth above.

Signed the ___10___ day of ___April___, 2012

Michael W. Johnston
Arbitrator

90

*Code of Federal Regulations* > *TITLE 7 -- AGRICULTURE* > *SUBTITLE B -- REGULATIONS OF THE DEPARTMENT OF AGRICULTURE* > *CHAPTER IV -- FEDERAL CROP INSURANCE CORPORATION, DEPARTMENT OF AGRICULTURE* > *PART 400 -- GENERAL ADMINISTRATIVE REGULATIONS* > *SUBPART P -- PREEMPTION OF STATE LAWS AND REGULATIONS*

## § 400.352 State and local laws and regulations preempted.

**(a)** No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

**(b)** The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:

**(1)** Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;

**(2)** Tax premiums associated with policies issued hereunder;

**(3)** Exercise approval authority over policies issued;

**(4)** Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled); or

**(5)** Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

The preceding list does not limit the scope or meaning of paragraph (a) of this section.

## Statutory Authority

**AUTHORITY NOTE APPLICABLE TO ENTIRE SUBPART:**

7 U.S.C. 1506, 1516.

## History

[55 FR 23069, June 6, 1990; 69 FR 48652, 48730, Aug. 10, 2004]

**Annotations**

## Notes

**[EFFECTIVE DATE NOTE:**

69 FR 48652, 48730, Aug. 10, 2004, amended paragraph (b)(4), effective Aug. 30, 2004.]

## Case Notes

**NOTES TO DECISIONS: COURT AND ADMINISTRATIVE DECISIONS SIGNIFICANTLY DISCUSSING SECTION --**

Alliance Ins. Co. v Wilson (2004, CA8 Minn) 384 F3d 547, reh den, reh, en banc, den (2004, CA8) 2004 US App LEXIS 25562

Agre v Rain & Hail LLC (2002, DC Minn) 196 F Supp 2d 905, 187 ALR5th 529, motion gr sub nom In re 2000 Sugar Beet Crop Ins. Litig. (2002, DC Minn) 228 F Supp 2d 992, dismd (2002, DC Minn) 228 F Supp 2d 999 (criticized in Ace Prop. & Cas. Ins. Co. v Fed. Crop Ins. Corp. (2006, CA8 Iowa) 440 F3d 992) and (criticized in Monroe v Brown (2003, MD Ala) 256 F Supp 2d 1292)

Reimers v Farm Credit Servs. AgCountry (2001, DC ND) 2001 US Dist LEXIS 8388

Dailey v Am. Growers Ins. (2003, Ky) 103 SW3d 60

**LexisNexis® Notes**

Case Notes Applicable to Entire Part
Administrative Law : Agency Rulemaking : General Overview
Administrative Law : Separation of Powers : Jurisdiction
Constitutional Law : Supremacy Clause : General Overview
Governments : Agriculture & Food
Governments : Agriculture & Food : General Overview
Governments : Federal Government : Claims By & Against
Governments : Local Governments : Finance
Governments : State & Territorial Governments : Claims By & Against
Governments : State & Territorial Governments : Relations With Governments
Insurance Law : General Liability Insurance : Coverage : Property
Insurance Law : Industry Regulation : General Overview
Insurance Law : Industry Regulation : Federal Regulations : General Overview
Insurance Law : Industry Regulation : Unfair Business Practices : Claims Investigations & Practices
Insurance Law : Property Insurance : Coverage : Crop Insurance
Torts : Business Torts : Fraud & Misrepresentation : Negligent Misrepresentation : General Overview

Torts : Procedure : Preemption : General Overview

**Case Notes Applicable to Entire Part**

*Part Note*

**Administrative Law : Agency Rulemaking : General Overview**

Nobles v. Rural Community INS. Servs., 122 F. Supp. 2d 1290, 2000 U.S. Dist. LEXIS 19493 (MD Ala Nov. 21, 2000).
*Overview: Terms of federally reinsured crop policies required cotton farmers to submit to binding arbitration concerning factual questions arising out of their policies before pursuing common law claims against their insurer in court.*

- Using its rulemaking powers, the Risk Management Agency (RMA) dictates the terms of the crop insurance contracts issued by private-sector insurance companies. 7 C.F.R. § 457.7. The terms and conditions preempt any contrary state laws that apply to other insurance contracts normally issued by private insurance companies. 15 U.S.C.S. § 1506(1); 7 C.F.R. § 400.352. At the same time, however, RMA has never intended to extinguish state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts. Go To Headnote

**Administrative Law : Separation of Powers : Jurisdiction**

Meyer v. Conlon, 162 F.3d 1264, 1998 U.S. App. LEXIS 31659 (10th Cir Dec. 21, 1998).
*Overview: Where defendant failed to pay plaintiff's crop insurance claim, and plaintiff sued, inter alia, for breach of contract and negligent misrepresentation, court held that regulations did not preempt state law causes of action.*

- State or local governmental entities or non-governmental entities are specifically prohibited from levying fines or judgments against companies arising out of actions or inactions on the part of individuals and entities authorized or required under the Federal Crop Insurance Act (FCIA), the regulations, any contract or agreement authorized by the FICA or by regulations, or procedures issued by the Federal Crop Insurance Corporation (FCIC) (nothing herein is intended to preclude any action on the part of any authorized state regulatory body or any state court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the FCIA, the regulations, any contract or agreement authorized by the FCIA or by regulations or procedures issued by the FCIC). 7 C.F.R. §§ 400.352(b), 400.352(b)(4). Go To Headnote

**Constitutional Law : Supremacy Clause : General Overview**

Brown v. Crop Hail Management, Inc., 813 F. Supp. 519, 1993 U.S. Dist. LEXIS 1688 (SD Tex Feb. 3, 1993).
*Overview: An insured's cause of action against insurers who were reinsured entities of the Federal Crop Insurance Corporation was properly removed to federal court because the Federal Crop Insurance Act completely preempted the insured's state law claims.*

- [7 C.F.R. § 400.352](#) states: no state or local governmental body or nongovernmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by the part or by the Federal Crop Insurance Corporation. [Go To Headnote](#)

### Governments : Agriculture & Food

[Rain & Hail INS. Serv. v. Fed. Crop INS. Corp., 426 F.3d 976, 2005 U.S. App. LEXIS 22437](#) (8th Cir Oct. 19, 2005).
*Overview: A Federal Crop Insurance Corporation (FCIC) bulletin was properly interpreted to bar reimbursement of compensatory and punitive state court damages against crop insurers under a reinsurance agreement, since the reimbursement was contrary to a regulation, but the agreement itself required the FCIC to reimburse non-consequential compensatory damages.*

- [7 C.F.R. § 400.352(b)(4)](#) prohibits states from levying judgments, punitive damages, or compensatory damages against companies arising out of their actions or inactions authorized or required under the Federal Crop Insurance Act (FCIA), [7 U.S.C.S. § 1501](#) et seq., the regulations, any contract or agreement authorized by the FCIA, or by regulations or procedures issued by the Federal Crop Insurance Corporation. [Go To Headnote](#)

### Governments : Agriculture & Food : General Overview

[Olsen v. United States, 546 F. Supp. 2d 1122, 2008 U.S. Dist. LEXIS 30878](#) (ED Wash Mar. 10, 2008), affirmed by [334 Fed. Appx. 834, 2009 U.S. App. LEXIS 12492 (9th Cir. Wash. 2009).](#)
*Overview: Summary judgment was granted in favor of Federal Crop Insurance Corporation (FCIC) because the FCIC was a party to neither the policies nor the arbitration agreements they contain and given the dispute between the parties concerning the existence of an arbitration agreement, the arbitrators did not have jurisdiction to preside over the disputes.*

- The Federal Crop Insurance Corporation's (FCIC's) regulations preempt state and local law to the extent that they conflict with the statute and regulations governing the FCIC. [7 U.S.C.S. § 1506](#)(l). Likewise, inconsistent state and local laws are inapplicable to the contracts of the FCIC. [7 C.F.R. § 400.352(a)](#). The federal regulations governing the FCIC refer to ″reinsurance,″ rather than ″substituted insurance.″ [7 C.F.R. § 400.96](#) also indicates that, however the relationship between a participant and the FCIC might be described, the mere existence of that relationship does not create privity of contract between an insured and the FCIC. The creation of privity via state contract or insurance law would be inconsistent with these regulations. Consequently, federal law prohibits the inference that the FCIC provided substitute insurance. [Go To Headnote](#)

[Granville United Bank v. Rain & Hail INS. Servs., 1996 U.S. Dist. LEXIS 12912](#) (ED NC Aug. 1, 1996).
*Overview: Action filed by claimant and bank against insurer was remanded to state court. State law claims were not considered federal claims. Neither FCIA nor its regulations did not provide for complete preemption of suits against FCIC reinsured companies.*

- [7 C.F.R. § 400.352(a)](#) provides that no state or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or

decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Federal Crop Insurance Corporation. Go To Headnote

*Kansas Ex Rel. Todd v. United States, 791 F. Supp. 1491, 1992 U.S. Dist. LEXIS 8749* (D Kan Mar. 10, 1992).
***Overview:*** *Federal Crop Insurance Corporation (FCIC) regulations preempting all state regulation and taxation of policies insured or reinsured by the FCIC did not exceed the agency's statutory authority and were not arbitrary or capricious.*

- The Federal Crop Insurance Corporation did not exceed its statutory authority in promulgating 7 C.F.R. §§ 400.351 and 400.352. Go To Headnote

**Governments : Federal Government : Claims By & Against**

Olsen v. United States, 546 F. Supp. 2d 1122, 2008 U.S. Dist. LEXIS 30878 (ED Wash Mar. 10, 2008), affirmed by 334 Fed. Appx. 834, 2009 U.S. App. LEXIS 12492 (9th Cir. Wash. 2009).
***Overview:*** *Summary judgment was granted in favor of Federal Crop Insurance Corporation (FCIC) because the FCIC was a party to neither the policies nor the arbitration agreements they contain and given the dispute between the parties concerning the existence of an arbitration agreement, the arbitrators did not have jurisdiction to preside over the disputes.*

- The Federal Crop Insurance Corporation's (FCIC's) regulations preempt state and local law to the extent that they conflict with the statute and regulations governing the FCIC. 7 U.S.C.S. § 1506(l). Likewise, inconsistent state and local laws are inapplicable to the contracts of the FCIC. 7 C.F.R. § 400.352(a). The federal regulations governing the FCIC refer to "reinsurance," rather than "substituted insurance." 7 C.F.R. § 400.96 also indicates that, however the relationship between a participant and the FCIC might be described, the mere existence of that relationship does not create privity of contract between an insured and the FCIC. The creation of privity via state contract or insurance law would be inconsistent with these regulations. Consequently, federal law prohibits the inference that the FCIC provided substitute insurance. Go To Headnote

**Governments : Local Governments : Finance**

Meyer v. Conlon, 162 F.3d 1264, 1998 U.S. App. LEXIS 31659 (10th Cir Dec. 21, 1998).
***Overview:*** *Where defendant failed to pay plaintiff's crop insurance claim, and plaintiff sued, inter alia, for breach of contract and negligent misrepresentation, court held that regulations did not preempt state law causes of action.*

- State or local governmental entities or non-governmental entities are specifically prohibited from levying fines or judgments against companies arising out of actions or inactions on the part of individuals and entities authorized or required under the Federal Crop Insurance Act (FCIA), the regulations, any contract or agreement authorized by the FICA or by regulations, or procedures issued by the Federal Crop Insurance Corporation (FCIC) (nothing herein is intended to preclude any action on the part of any authorized state regulatory body or any state court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the FCIA, the regulations, any contract or agreement authorized by the FCIA or by

regulations or procedures issued by the FCIC). 7 C.F.R. §§ 400.352(b), 400.352(b)(4). Go To Headnote

**Governments : State & Territorial Governments : Claims By & Against**

Alliance INS. Co. v. Wilson, 2003 U.S. Dist. LEXIS 6734 (D Minn Apr. 16, 2003).
*Overview: The Commissioner of the Minnesota Department of Commerce could examine the practices of two insurance companies regarding crop insurance policies. The Federal Crop Insurance Act did not completely preempt the regulation of that area.*

- While state and local government authorities are precluded from levying fines or judgments against insurance companies for acts consistent with the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., there was nothing intended to preclude any action on the part of any authorized state regulatory body regarding activity that is not required or prohibited by the FCIA or the Federal Crop Insurance Corporation's regulations. 7 C.F.R. § 400.352(b)(4). Go To Headnote

**Governments : State & Territorial Governments : Relations With Governments**

Alliance INS. Co. v. Wilson, 2003 U.S. Dist. LEXIS 14128 (D Minn Aug. 12, 2003).
*Overview: A stay was denied as federal law did not preempt state insurance regulatory standards or the jurisdiction of the Commissioner of the Minnesota Department of Commerce to examine insurers' affairs. Injunction requirements were not met.*

- Congress intends that, while state and local government authorities are precluded from levying fines or judgments against insurance companies for acts consistent with the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., under 7 C.F.R. § 400.352 (b)(4), nothing is intended to preclude any action on the part of any authorized state regulatory body regarding activity that is not required or prohibited by the FCIA or the Federal Crop Insurance Corporation's regulations. Go To Headnote

**Insurance Law : General Liability Insurance : Coverage : Property**

Nobles v. Rural Cmty. INS. Servs., 303 F. Supp. 2d 1292, 2004 U.S. Dist. LEXIS 2807 (MD Ala Feb. 24, 2004).
*Overview: Under the arbitration panel's decision, plaintiff farmers were restored to the position they would have been in if their crop insurance contract had been fully performed and any greater recovery for breach-of-contract would violate Alabama law.*

- The parenthetical language in 7 C.F.R. § 400.352(b)(4) explains that nothing herein is intended to preclude any action on the part of any authorized entity concerning any actions or inactions on the part of the company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, 7 U.S.C.S. §§ 1501 to 1521, or the Federal Crop Insurance Corporation rules and regulations. Go To Headnote

- The parenthetical language in 7 C.F.R. § 400.352(b)(4) permits lawsuits based on agents' actions not authorized by the Federal Crop Insurance Act, 7 U.S.C.S. §§ 1501 to 1521, or the Federal Crop Insurance Corporation. Go To Headnote

**Insurance Law : Industry Regulation : General Overview**

Nobles v. Rural Cmty. INS. Servs., 303 F. Supp. 2d 1292, 2004 U.S. Dist. LEXIS 2807 (MD Ala Feb. 24, 2004).

*Overview: Under the arbitration panel's decision, plaintiff farmers were restored to the position they would have been in if their crop insurance contract had been fully performed and any greater recovery for breach-of-contract would violate Alabama law.*

- The parenthetical language in 7 C.F.R. § 400.352(b)(4) explains that nothing herein is intended to preclude any action on the part of any authorized entity concerning any actions or inactions on the partof the company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, 7 U.S.C.S. §§ 1501 to 1521, or the Federal Crop Insurance Corporation rules and regulations. Go To Headnote

Alliance INS. Co. v. Wilson, 2003 U.S. Dist. LEXIS 14128 (D Minn Aug. 12, 2003).

*Overview: A stay was denied as federal law did not preempt state insurance regulatory standards or the jurisdiction of the Commissioner of the Minnesota Department of Commerce to examine insurers' affairs. Injunction requirements were not met.*

- Congress intends that, while state and local government authorities are precluded from levying fines or judgments against insurance companies for acts consistent with the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., under 7 C.F.R. § 400.352 (b)(4), nothing is intended to preclude any action on the part of any authorized state regulatory body regarding activity that is not required or prohibited by the FCIA or the Federal Crop Insurance Corporation's regulations. Go To Headnote

Alliance INS. Co. v. Wilson, 2003 U.S. Dist. LEXIS 6734 (D Minn Apr. 16, 2003).

*Overview: The Commissioner of the Minnesota Department of Commerce could examine the practices of two insurance companies regarding crop insurance policies. The Federal Crop Insurance Act did not completely preempt the regulation of that area.*

- While state and local government authorities are precluded from levying fines or judgments against insurance companies for acts consistent with the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., there was nothing intended to preclude any action on the part of any authorized state regulatory body regarding activity that is not required or prohibited by the FCIA or the Federal Crop Insurance Corporation's regulations. 7 C.F.R. § 400.352(b)(4). Go To Headnote

**Insurance Law : Industry Regulation : Federal Regulations : General Overview**

Alliance INS. Co. v. Wilson, 384 F.3d 547, 2004 U.S. App. LEXIS 20102 (8th Cir Sept. 24, 2004).

*Overview: Federal Crop Insurance Act did not totally preempt Minnesota law; district court properly held that state Commerce Commissioner could initiate market conduct examination to review insurers' handling of farmers' claims under crop insurance policies.*

- The language of 7 C.F.R. § 400.352 permits lawsuits based on agents' actions not authorized by the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., or the Federal Crop Insurance Corporation, which negates the argument that the regulations interpret the FCIA as wholly

preemptive. The FCIA does not intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance. Go To Headnote

Brown v. Crop Hail Management, Inc., 813 F. Supp. 519, 1993 U.S. Dist. LEXIS 1688 (SD Tex Feb. 3, 1993).
*Overview: An insured's cause of action against insurers who were reinsured entities of the Federal Crop Insurance Corporation was properly removed to federal court because the Federal Crop Insurance Act completely preempted the insured's state law claims.*

- 7 C.F.R. § 400.352 states: no state or local governmental body or nongovernmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by the part or by the Federal Crop Insurance Corporation. Go To Headnote

- The purpose of 7 C.F.R. §§ 400.351, 400.352 is to prescribe the procedures for federal preemption of state laws and regulations not consistent with the purpose, intent, or authority of the Federal Crop Insurance Act. 7 C.F.R. § 400.351. Go To Headnote

**Insurance Law : Industry Regulation : Unfair Business Practices : Claims Investigations & Practices**

Alliance INS. Co. v. Wilson, 384 F.3d 547, 2004 U.S. App. LEXIS 20102 (8th Cir Sept. 24, 2004).
*Overview: Federal Crop Insurance Act did not totally preempt Minnesota law; district court properly held that state Commerce Commissioner could initiate market conduct examination to review insurers' handling of farmers' claims under crop insurance policies.*

- The language of 7 C.F.R. § 400.352 permits lawsuits based on agents' actions not authorized by the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., or the Federal Crop Insurance Corporation, which negates the argument that the regulations interpret the FCIA as wholly preemptive. The FCIA does not intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance. Go To Headnote

**Insurance Law : Property Insurance : Coverage : Crop Insurance**

State Bank of Toulton v. Covey (in re Duckworth), 2012 Bankr. LEXIS 1219 (Bankr CD Ill Mar. 22, 2012).
*Overview: Creditor bank argued that it was not necessary for its security agreement to identify the date or amount of a secured note in order to be effective under 810 ILCS 5/9-203(b), however, the agreement did not include an express written dragnet clause, and so did not include the future acquired crop insurance proceeds.*

- Preemption is intended with respect to both the imposition and enforcement of liens, 7 C.F.R. § 400.352, an interest in an insured crop existing by virtue of a lien does not entitle the lienholder to any benefit under the contract, 7 C.F.R. § 401.5, and, while a debtor may assign the right to indemnity, the assignment must be on FCIC's form and will not be effective until approved in writing by the Federal Crop Insurance Commission, 7 C.F.R. § 401.8. Go To Headnote

Farmers Crop INS. Alliance v. Laux, 442 F. Supp. 2d 488, 2006 U.S. Dist. LEXIS 48717 (SD Ohio July 18, 2006).

*Overview: Farmers were entitled to indemnification for losses associated with prevented planting and crop losses and to other remedies in the form of pre-judgment and post-judgment interest and attorney fees and costs because the insurance company's failure to honor the terms of the crop revenue coverage (CRC) policies was not authorized by federal law.*

- While federal law, particularly the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., does not contain language permitting suits against private companies reinsured by the Federal Crop Insurance Corporation (FCIC), or its replacement the risk management agency (RMA), farmers are not prevented from suing their private crop insurance company under state law when that insurance company denies the farmer's claim. 7 U.S.C.S. § 1508(j)(2)(A) does not preempt state law claims against private insurance companies. 7 C.F.R. § 400.352(b) and (b)(4) permits lawsuits based on an insurance agent's actions not authorized by the FCIA or the FCIC or RMA of which one such action is a failure to honor the terms of an insurance contract. The FCIA merely confers exclusive federal jurisdiction over lawsuits against RMA or the Secretary of Agriculture. Go To Headnote

Rain & Hail INS. Serv. v. Fed. Crop INS. Corp., 426 F.3d 976, 2005 U.S. App. LEXIS 22437 (8th Cir Oct. 19, 2005).

*Overview: A Federal Crop Insurance Corporation (FCIC) bulletin was properly interpreted to bar reimbursement of compensatory and punitive state court damages against crop insurers under a reinsurance agreement, since the reimbursement was contrary to a regulation, but the agreement itself required the FCIC to reimburse non-consequential compensatory damages.*

- 7 C.F.R. § 400.352(b)(4) prohibits states from levying judgments, punitive damages, or compensatory damages against companies arising out of their actions or inactions authorized or required under the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., the regulations, any contract or agreement authorized by the FCIA, or by regulations or procedures issued by the Federal Crop Insurance Corporation. Go To Headnote

Alliance INS. Co. v. Wilson, 384 F.3d 547, 2004 U.S. App. LEXIS 20102 (8th Cir Sept. 24, 2004).

*Overview: Federal Crop Insurance Act did not totally preempt Minnesota law; district court properly held that state Commerce Commissioner could initiate market conduct examination to review insurers' handling of farmers' claims under crop insurance policies.*

- The language of 7 C.F.R. § 400.352 permits lawsuits based on agents' actions not authorized by the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., or the Federal Crop Insurance Corporation, which negates the argument that the regulations interpret the FCIA as wholly preemptive. The FCIA does not intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance. Go To Headnote

Nobles v. Rural Cmty. INS. Servs., 303 F. Supp. 2d 1292, 2004 U.S. Dist. LEXIS 2807 (MD Ala Feb. 24, 2004).

*Overview: Under the arbitration panel's decision, plaintiff farmers were restored to the position they would have been in if their crop insurance contract had been fully performed and any greater recovery for breach-of-contract would violate Alabama law.*

- The parenthetical language in 7 C.F.R. § 400.352(b)(4) explains that nothing herein is intended to preclude any action on the part of any authorized entity concerning any actions or inactions on the part of the company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, 7 U.S.C.S. §§ 1501 to 1521, or the Federal Crop Insurance Corporation rules and regulations. Go To Headnote

- The parenthetical language in 7 C.F.R. § 400.352(b)(4) permits lawsuits based on agents' actions not authorized by the Federal Crop Insurance Act, 7 U.S.C.S. §§ 1501 to 1521, or the Federal Crop Insurance Corporation. Go To Headnote

Alliance INS. Co. v. Wilson, 2003 U.S. Dist. LEXIS 14128 (D Minn Aug. 12, 2003).
*Overview: A stay was denied as federal law did not preempt state insurance regulatory standards or the jurisdiction of the Commissioner of the Minnesota Department of Commerce to examine insurers' affairs. Injunction requirements were not met.*

- Congress intends that, while state and local government authorities are precluded from levying fines or judgments against insurance companies for acts consistent with the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., under 7 C.F.R. § 400.352 (b)(4), nothing is intended to preclude any action on the part of any authorized state regulatory body regarding activity that is not required or prohibited by the FCIA or the Federal Crop Insurance Corporation's regulations. Go To Headnote

Alliance INS. Co. v. Wilson, 2003 U.S. Dist. LEXIS 6734 (D Minn Apr. 16, 2003).
*Overview: The Commissioner of the Minnesota Department of Commerce could examine the practices of two insurance companies regarding crop insurance policies. The Federal Crop Insurance Act did not completely preempt the regulation of that area.*

- While state and local government authorities are precluded from levying fines or judgments against insurance companies for acts consistent with the Federal Crop Insurance Act (FCIA), 7 U.S.C.S. § 1501 et seq., there was nothing intended to preclude any action on the part of any authorized state regulatory body regarding activity that is not required or prohibited by the FCIA or the Federal Crop Insurance Corporation's regulations. 7 C.F.R. § 400.352(b)(4). Go To Headnote

Nobles v. Rural Community INS. Servs., 122 F. Supp. 2d 1290, 2000 U.S. Dist. LEXIS 19493 (MD Ala Nov. 21, 2000).
*Overview: Terms of federally reinsured crop policies required cotton farmers to submit to binding arbitration concerning factual questions arising out of their policies before pursuing common law claims against their insurer in court.*

- Using its rulemaking powers, the Risk Management Agency (RMA) dictates the terms of the crop insurance contracts issued by private-sector insurance companies. 7 C.F.R. § 457.7. The terms and conditions preempt any contrary state laws that apply to other insurance contracts normally issued by private insurance companies. 15 U.S.C.S. § 1506(1); 7 C.F.R. § 400.352. At the same time, however, RMA has never intended to extinguish state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts. Go To Headnote

Meyer v. Conlon, 162 F.3d 1264, 1998 U.S. App. LEXIS 31659 (10th Cir Dec. 21, 1998).

*Overview: Where defendant failed to pay plaintiff's crop insurance claim, and plaintiff sued, inter alia, for breach of contract and negligent misrepresentation, court held that regulations did not preempt state law causes of action.*

- State or local governmental entities or non-governmental entities are specifically prohibited from levying fines or judgments against companies arising out of actions or inactions on the part of individuals and entities authorized or required under the Federal Crop Insurance Act (FCIA), the regulations, any contract or agreement authorized by the FICA or by regulations, or procedures issued by the Federal Crop Insurance Corporation (FCIC) (nothing herein is intended to preclude any action on the part of any authorized state regulatory body or any state court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the FCIA, the regulations, any contract or agreement authorized by the FCIA or by regulations or procedures issued by the FCIC). 7 C.F.R. §§ 400.352(b), 400.352(b)(4). Go To Headnote

Granville United Bank v. Rain & Hail INS. Servs., 1996 U.S. Dist. LEXIS 12912 (ED NC Aug. 1, 1996).
*Overview: Action filed by claimant and bank against insurer was remanded to state court. State law claims were not considered federal claims. Neither FCIA nor its regulations did not provide for complete preemption of suits against FCIC reinsured companies.*

- 7 C.F.R. § 400.352(a) provides that no state or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Federal Crop Insurance Corporation. Go To Headnote

**Torts : Business Torts : Fraud & Misrepresentation : Negligent Misrepresentation : General Overview**

Nobles v. Rural Cmty. INS. Servs., 303 F. Supp. 2d 1292, 2004 U.S. Dist. LEXIS 2807 (MD Ala Feb. 24, 2004).
*Overview: Under the arbitration panel's decision, plaintiff farmers were restored to the position they would have been in if their crop insurance contract had been fully performed and any greater recovery for breach-of-contract would violate Alabama law.*

- The parenthetical language in 7 C.F.R. § 400.352(b)(4) permits lawsuits based on agents' actions not authorized by the Federal Crop Insurance Act, 7 U.S.C.S. §§ 1501 to 1521, or the Federal Crop Insurance Corporation. Go To Headnote

**Torts : Procedure : Preemption : General Overview**

Nobles v. Rural Community INS. Servs., 122 F. Supp. 2d 1290, 2000 U.S. Dist. LEXIS 19493 (MD Ala Nov. 21, 2000).
*Overview: Terms of federally reinsured crop policies required cotton farmers to submit to binding arbitration concerning factual questions arising out of their policies before pursuing common law claims against their insurer in court.*

- Using its rulemaking powers, the Risk Management Agency (RMA) dictates the terms of thecrop insurance contracts issued by private-sector insurance companies. 7 C.F.R. § 457.7. The terms and conditions preempt any contrary state laws that apply to other insurance contracts normally issued by private insurance companies. 15 U.S.C.S. § 1506(1); 7 C.F.R. § 400.352. At the same time, however, RMA has never intended to extinguish state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts. Go To Headnote

## Research References & Practice Aids

**NOTES APPLICABLE TO ENTIRE TITLE:**

CROSS REFERENCES: Animal and Plant Health Inspection Service, Department of Agriculture, see 7 CFR chapter III; 9 CFR chapter I.

Commodity Futures Trading Commission, see 17 CFR chapter I.

Commodity Credit Corporation, Department of Agriculture, see 7 CFR chapter XIV.

Customs Service, Department of the Treasury, see 19 CFR chapter I.

Farm Credit Administration, see 12 CFR chapter VI.

Farmers Home Administration, Department of Agriculture, see 7 CFR chapter XVIII.

Federal Crop Insurance Corporation, Department of Agriculture, see 7 CFR chapter IV.

Fish and Wildlife Service, Department of the Interior, see 50 CFR chapters I and IV.

Food and Drug Administration, Department of Health and Human Services, see 21 CFR chapter I.

Food Safety and Inspection Service, Meat and Poultry Inspection, Department of Agriculture, see 9 CFR chapter III.

Forest Service, Department of Agriculture, see 36 CFR chapter II.

Rural Electrification Administration, Department of Agriculture, see 7 CFR chapter XVII.

Soil Conservation Service, Department of Agriculture, see 7 CFR chapter VI.

United States International Trade Commission, see 19 CFR chapter II.

Other regulations issued by the Department of Agriculture appear in chapters I to XLI of title 7, and chapter 4 of title 48.

LEXISNEXIS' CODE OF FEDERAL REGULATIONS

Copyright © 2015, by Matthew Bender & Company, a member of the LexisNexis Group. All rights reserved.

*United States Code Service - Titles 1 through 54* > *TITLE 7. AGRICULTURE* > *CHAPTER 36. CROP INSURANCE* > *FEDERAL CROP INSURANCE ACT*

## § 1502. Purpose and definitions

**(a)** Purpose. It is the purpose of this subtitle [7 USCS §§ 1501 et seq.] to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance.

**(b)** Definitions. As used in this subtitle [7 USCS §§ 1501 et seq.]:

**(1)** Additional coverage. The term "additional coverage" means a plan of crop insurance coverage providing a level of coverage greater than the level available under catastrophic risk protection.

**(2)** Approved insurance provider. The term "approved insurance provider" means a private insurance provider that has been approved by the Corporation to provide insurance coverage to producers participating in the Federal crop insurance program established under this subtitle [7 USCS §§ 1501 et seq.].

**(3)** Beginning farmer or rancher. The term "beginning farmer or rancher" means a farmer or rancher who has not actively operated and managed a farm or ranch with a bona fide insurable interest in a crop or livestock as an owner-operator, landlord, tenant, or sharecropper for more than 5 crop years, as determined by the Secretary.

**(4)** Board. The term "Board" means the Board of Directors of the Corporation established under section 505(a) [7 USCS § 1505(a)].

**(5)** Corporation. The term "Corporation" means the Federal Crop Insurance Corporation established under section 503 [7 USCS § 1503].

**(6)** Department. The term "Department" means the United States Department of Agriculture.

**(7)** Farm financial benchmarking. The term "farm financial benchmarking" means--

**(A)** the process of comparing the performance of an agricultural enterprise against the performance of other similar enterprises, through the use of comparable and reliable data, in order to identify business management strengths, weaknesses, and steps necessary to improve management performance and business profitability; and

**(B)** benchmarking of the type conducted by farm management and producer associations consistent with the activities described in or funded pursuant to section 1672D of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 5925f).

**(8)** Loss ratio. The term "loss ratio" means the ratio of all sums paid by the Corporation as indemnities under any eligible crop insurance policy to that portion of the premium designated for anticipated losses and a reasonable reserve, other than that portion of the premium designated for operating and administrative expenses.

**(9)** Organic crop. The term ″organic crop″ means an agricultural commodity that is organically produced consistent with section 2103 of the Organic Foods Production Act of 1990 (7 U.S.C. 6502).

**(10)** Secretary. The term ″Secretary″ means the Secretary of Agriculture.

**(11)** Transitional yield. The term ″transitional yield″ means the maximum average production per acre or equivalent measure that is assigned to acreage for a crop year by the Corporation in accordance with the regulations of the Corporation whenever the producer fails--

    **(A)** to certify that acceptable documentation of production and acreage for the crop year is in the possession of the producer; or

    **(B)** to present the acceptable documentation on the demand of the Corporation or an insurance company reinsured by the Corporation.

**(c)** Protection of confidential information.

    **(1)** General prohibition against disclosure. Except as provided in paragraph (2), the Secretary, any other officer or employee of the Department or an agency thereof, an approved insurance provider and its employees and contractors, and any other person may not disclose to the public information furnished by a producer under this subtitle [7 USCS §§ 1501 et seq.].

    **(2)** Authorized disclosure.

        **(A)** Disclosure in statistical or aggregate form. Information described in paragraph (1) may be disclosed to the public if the information has been transformed into a statistical or aggregate form that does not allow the identification of the person who supplied particular information.

        **(B)** Consent of producer. A producer may consent to the disclosure of information described in paragraph (1). The participation of the producer in, and the receipt of any benefit by the producer under, this subtitle [7 USCS §§ 1501 et seq.] or any other program administered by the Secretary may not be conditioned on the producer providing consent under this paragraph.

    **(3)** Violations; penalties. Section 1770(c) of the Food Security Act of 1985 (7 U.S.C. 2276(c)) shall apply with respect to the release of information collected in any manner or for any purpose prohibited by this subsection.

    **(4)** Information.

        **(A)** Request. Subject to subparagraph (B), the Farm Service Agency shall, in a timely manner, provide to an agent or an approved insurance provider authorized by the producer any information (including Farm Service Agency Form 578s (or any successor form)) or maps (or any corrections to those forms or maps) that may assist the agent or approved insurance provider in insuring the producer under a policy or plan of insurance under this subtitle.

        **(B)** Privacy. Except as provided in subparagraph (C), an agent or approved insurance provider that receives the information of a producer pursuant to subparagraph (A) shall treat the information in accordance with paragraph (1).

   **(C)** Sharing. Nothing in this section prohibits the sharing of the information of a producer pursuant to subparagraph (A) between the agent and the approved insurance provider of the producer.

**(d)** Relation to other laws.

   **(1)** Terms and conditions of policies and plans. The terms and conditions of any policy or plan of insurance offered under this subtitle [7 USCS §§ 1501 et seq.] that is reinsured by the Corporation shall not--

   **(A)** be subject to the jurisdiction of the Commodity Futures Trading Commission or the Securities and Exchange Commission; or

   **(B)** be considered to be accounts, agreements (including any transaction that is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), or transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market for the purposes of the Commodity Exchange Act (7 U.S.C. 1 et seq.).

   **(2)** Effect on CFTC and Commodity Exchange Act. Nothing in this subtitle [7 USCS §§ 1501 et seq.] affects the jurisdiction of the Commodity Futures Trading Commission or the applicability of the Commodity Exchange Act (7 U.S.C. 1 et seq.) to any transaction conducted on a contract market under that Act by an approved insurance provider to offset the approved insurance provider's risk under a plan or policy of insurance under this subtitle [7 USCS §§ 1501 et seq.].

## History

   (Feb. 16, 1938, ch 30, Title V, Subtitle A, § 502, 52 Stat. 72; June 21, 1941, ch 214, § 1, *55 Stat. 255*; Aug. 1, 1947, ch 440, § 4, 61 Stat. 719; Oct. 13, 1994, *P.L. 103-354*, Title I, § 102(a), 108 Stat. 3180; June 20, 2000, *P.L. 106-224*, Title I, Subtitle B, § 122, Subtitle D, § 141, 114 Stat. 377, 389; May 22, 2008, *P.L. 110-234*, Title XII, Subtitle A, §§ 12001, 12033(c), 122 Stat. 1371, 1405; June 18, 2008, *P.L. 110-246*, § 4(a), Title XII, Subtitle A, §§ 12001, 12033(c), 122 Stat. 1664, 2133, 2167; Feb. 7, 2014, *P.L. 113-79*, Title XI, §§ 11001, 11016(a), 11027(a), 128 Stat. 954, 963, 977.)

UNITED STATES CODE SERVICE

Copyright © 2015 Matthew Bender & Company, Inc. a member of the LexisNexis Group ™ All rights reserved.

*United States Code Service - Titles 1 through 54* > *TITLE 7. AGRICULTURE* > *CHAPTER 36. CROP INSURANCE* > *FEDERAL CROP INSURANCE ACT*

## § 1506. General powers

**(a)** Succession. The Corporation shall have succession in its corporate name.

**(b)** Corporate seal. The Corporation may adopt, alter, and use a corporate seal, which shall be judicially noticed.

**(c)** Property. The Corporation may purchase or lease and hold such real and personal property as it deems necessary or convenient in the transaction of its business, and may dispose of such property held by it upon such terms as it deems appropriate;

**(d)** Suit. Subject to section 508(j)(2)(A) [7 USCS § 1508(j)(2)(A)], the Corporation, subject to the provisions of section 508(j) [7 USCS § 1508(j)], may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property. The district courts of the United States, including the district courts of the District of Columbia and of any territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation. The Corporation may intervene in any court in any suit, action, or proceeding in which it has an interest. Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.

**(e)** Bylaws and regulations. The Corporation may adopt, amend, and repeal bylaws, rules, and regulations governing the manner in which its business may be conducted and the powers granted to it by law may be exercised and enjoyed.

**(f)** Mails. The Corporation shall be entitled to the use of the United States mails in the same manner as the other executive agencies of the Government.

**(g)** Assistance. The Corporation, with the consent of any board, commission, independent establishment, or executive department of the Government, including any field service thereof, may avail itself of the use of information, services, facilities, officials, and employees thereof in carrying out the provisions of this subtitle [7 USCS §§ 1501 et seq.];

**(h)** Collection and sharing of information.

**(1)** Surveys and investigations. The Corporation may conduct surveys and investigations relating to crop insurance, agriculture-related risks and losses, and other issues related to carrying out this subtitle [7 USCS §§ 1501 et seq.].

**(2)** Data collection. The Corporation shall assemble data for the purpose of establishing sound actuarial bases for insurance on agricultural commodities.

**(3)** Sharing of records. Notwithstanding section 502(c) [7 USCS § 1502(c)], records submitted in accordance with this subtitle [7 USCS §§ 1501 et seq.] and section 196 of the Agricultural Market Transition Act (7 U.S.C. 7333) shall be available to agencies and local offices of the Department, appropriate State and Federal agencies and divisions, and approved insurance

providers for use in carrying out this subtitle [7 USCS §§ 1501 et seq.], such section 196, and other agricultural programs.

**(i)** Expenditures. The Corporation shall determine the character and necessity for its expenditures under this subtitle [7 USCS §§ 1501 et seq.] and the manner in which they shall be incurred, allowed, and paid, without regard to the provisions of any other laws governing the expenditure of public funds and such determinations shall be final and conclusive upon all other officers of the Government.

**(j)** Settling claims. The Corporation shall have the authority to make final and conclusive settlement and adjustment of any claim by or against the Corporation or a fiscal officer of the Corporation.

**(k)** Other powers. The Corporation shall have such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the Corporation and all such incidental powers as are customary in corporations generally.

**(l)** Contracts. The Corporation may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.

**(m)** Submission of certain information.

**(1)** Social security account and employer identification numbers. The Corporation shall require, as a condition of eligibility for participation in the multiple peril crop insurance program, submission of social security account numbers, subject to the requirements of section 205(c)(2)(C)(iii) of the Social Security Act [*42 USCS § 405(c)(2)(C)(iii)*], and employer identification numbers, subject to the requirements of section 6109(f) of the Internal Revenue Code of 1986 [26 USCS § 6109(f)].

**(2)** Notification by policyholders. Each policyholder shall notify each individual or other entity that acquires or holds a substantial beneficial interest in such policyholder of the requirements and limitations under this subtitle [7 USCS §§ 1501 et seq.].

**(3)** Identification of holders of substantial interests. The Manager of the Corporation may require each policyholder to provide to the Manager, at such times and in such manner as prescribed by the Manager, the name of each individual that holds or acquires a substantial beneficial interest in the policyholder.

**(4)** Definition. For purposes of this subsection, the term "substantial beneficial interest" means not less than 5 percent of all beneficial interests in the policyholder.

**(n)** Actuarial soundness.

**(1)** Projected loss ratio as of October 1, 1995. The Corporation shall take such actions as are necessary to improve the actuarial soundness of Federal multiperil crop insurance coverage made available under this subtitle [7 USCS §§ 1501 et seq.] to achieve, on and after October 1, 1995, an overall projected loss ratio of not greater than 1.1, including--

    (A) instituting appropriate requirements for documentation of the actual production history of insured producers to establish recorded or appraised yields for Federal crop insurance coverage that more accurately reflect the associated actuarial risk, except that the Corporation may not carry out this paragraph in a manner that would prevent beginning farmers (as defined by the Secretary) from obtaining Federal crop insurance;

    (B) establishing in counties, to the extent practicable, a crop insurance option based on area yields in a manner that allows an insured producer to qualify for an indemnity if a loss has occurred in a specified area in which the farm of the insured producer is located;

    (C) establishing a database that contains the social security account and employee identification numbers of participating producers, agents, and loss adjusters and using the numbers to identify insured producers, agents, and loss adjusters who are high risk for actuarial purposes and insured producers who have not documented at least 4 years of production history, to assess the performance of insurance providers, and for other purposes permitted by law; and

    (D) taking any other measures authorized by law to improve the actuarial soundness of the Federal crop insurance program while maintaining fairness and effective coverage for agricultural producers.

  (2) Projected loss ratio. The Corporation shall take such actions, including the establishment of adequate premiums, as are necessary to improve the actuarial soundness of Federal multiperil crop insurance made available under this subtitle [7 USCS §§ 1501 et seq.] to achieve an overall projected loss ratio of not greater than 1.0.

  (3) Nonstandard classification system. To the extent that the Corporation uses the nonstandard classification system, the Corporation shall apply the system to all insured producers in a fair and consistent manner.

(o) Regulations. The Secretary and the Corporation are each authorized to issue such regulations as are necessary to carry out this subtitle [7 USCS §§ 1501 et seq.].

(p) Purchase of American-made equipment and products.

  (1) Sense of Congress. It is the sense of Congress that, to the greatest extent practicable, all equipment and products purchased by the Corporation using funds made available to the Corporation should be American-made.

  (2) Notice requirement. In providing financial assistance to, or entering into any contract with, any entity for the purchase of equipment and products to carry out this subtitle [7 USCS §§ 1501 et seq.], the Corporation, to the greatest extent practicable, shall provide to the entity a notice describing the statement made in paragraph (1).

(q) [Redesignated]

(r) Procedures for responding to certain inquiries.

  (1) Procedures required. The Corporation shall establish procedures under which the Corporation will provide a final agency determination in response to an inquiry regarding the interpretation by the Corporation of this subtitle [7 USCS §§ 1501 et seq.] or any regulation issued under this subtitle [7 USCS §§ 1501 et seq.].

**(2)** Implementation. Not later than 180 days after the date of enactment of this subsection [enacted June 23, 1998], the Corporation shall issue regulations to implement this subsection. At a minimum, the regulations shall establish--

**(A)** the manner in which inquiries described in paragraph (1) are required to be submitted to the Corporation; and

**(B)** a reasonable maximum number of days within which the Corporation will respond to all inquiries.

**(3)** Effect of failure to timely respond. If the Corporation fails to respond to an inquiry in accordance with the procedures established pursuant to this subsection, the person requesting the interpretation of this subtitle [7 USCS §§ 1501 et seq.] or regulation may assume the interpretation is correct for the applicable reinsurance year.

**(s)** [Redesignated]

## History

(Feb. 16, 1938, ch 30, Title V, Subtitle A, § 506,52 Stat. 73; June 21, 1941, ch 214, § 2, *55 Stat. 255*; Aug. 1, 1947, ch 440, § 7, 61 Stat. 719; Aug. 25, 1949, ch 512, § 8, 63 Stat. 665; Sept. 26, 1980, P.L. 96-365, Title I, §§ 103, 107(a), 94 Stat. 1313; Nov. 28, 1990, *P.L. 101-624*, Title XXII, Subtitle A, §§ 2201(a), 2202, 104 Stat. 3951, 3954; Dec. 13, 1991, *P.L. 102-237*, Title VI, § 601(1), (2), 105 Stat. 1878; Aug. 10, 1993, *P.L. 103-66*, Title I, Subtitle D, § 1403(a), 107 Stat. 333; Oct. 13, 1994, *P.L. 103-354*, Title I, §§ 104, 119(f)(2), 108 Stat. 3181, 3208; June 23, 1998, *P.L. 105-185*, Title V, Subtitle C, § 533, 112 Stat. 583; June 20, 2000, *P.L. 106-224*, Title I, Subtitle B, §§ 121(b), 124(b), 114 Stat. 377, 378; May 22, 2008, *P.L. 110-234*, Title XII, Subtitle A, §§ 12002(a), (b)(1), 12003(a), 12033(c), 122 Stat. 1371, 1405; June 18, 2008, *P.L. 110-246*, § 4(a), Title XII, Subtitle A, §§ 12002(a), (b)(1), 12003(a), 12033(c), 122 Stat. 1664, 2133, 2167.)

UNITED STATES CODE SERVICE

Copyright © 2015 Matthew Bender & Company, Inc. a member of the LexisNexis Group ™ All rights reserved.

*United States Code Service - Titles 1 through 54* > *TITLE 7. AGRICULTURE* > *CHAPTER 36. CROP INSURANCE* > *FEDERAL CROP INSURANCE ACT*

## § 1507. Personnel of Corporation

**(a)**  Appointment; Civil service exemption; compensation The Secretary shall appoint such officers and employees as may be necessary for the transaction of the business of the Corporation pursuant to civil-service laws and regulations, fix their compensation [in accordance with the provisions of the Classification Act of 1923, as amended], define their authority and duties, and delegate to them such of the powers vested in the Corporation as the Secretary may determine appropriate. However, personnel paid by the hour, day, or month when actually employed may be appointed [and their compensation fixed] without regard to civil-service laws and regulations [or the Classification Act of 1923, as amended].

**(b)**  Application of employee's compensation law. Insofar as applicable, the benefits of the Act entitled ″An Act to provide compensation for employees of the United States suffering injuries while in the performance of their duties, and for other purposes,″ approved September 7, 1916, as amended, shall extend to persons given employment under the provisions of this subtitle [7 USCS §§ 1501 et seq.], including the employees of the committees and associations referred to in subsection (c) of this section and the members of such committees.

**(c)**  Use of associations of producers and private insurance companies; payment of administrative and program expenses; sale of crop insurance through private agents and brokers; renewals, exclusion of compensation from premium rates, indemnification for errors or omissions of Commission or its contractors. In the administration of this subtitle [7 USCS §§ 1501 et seq.], the Board shall, to the maximum extent possible, (1) establish or use committees or associations of producers and make payments to them to cover the administrative and program expenses, as determined by the Board, incurred by them in cooperating in carrying out this subtitle [7 USCS §§ 1501 et seq.], (2) contract with private insurance companies, private rating bureaus, and other organizations as appropriate for actuarial services, services relating to loss adjustment and rating plans of insurance, and other services to avoid duplication by the Federal Government of services that are or may readily be available in the private sector and to enable the Corporation to concentrate on regulating the provision of insurance under this subtitle [7 USCS §§ 1501 et seq.] and evaluating new products and materials submitted under section 508(h) or 523 [7 USCS § 1508(h) or 1523], and reimburse such companies for the administrative and program expenses, as determined by the Board, incurred by them, under terms and provisions and rates of compensation consistent with those generally prevailing in the insurance industry, and (3) encourage the sale of Federal crop insurance through licensed private insurance agents and brokers and give the insured the right to renew such insurance for successive terms through such agents and brokers, in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect: *Provided,* That such compensation shall not be included in computations establishing premium rates. The Board shall provide such agents and brokers with indemnification, including costs and reasonable attorney

fees, from the Corporation for errors or omissions on the part of the Corporation or its contractors for which the agent or broker is sued or held liable, except to the extent the agent or broker has caused the error or omission. Nothing in this subsection shall permit the Corporation to contract with other persons to carry out the responsibility of the Corporation to review and approve policies, rates, and other materials submitted under section 508(h) [7 USCS § 1508(h)].

**(d)**  Allotment of funds to Federal and State agencies. The Secretary may allot to bureaus and offices of the Department or transfer to such other agencies of the State and Federal Governments that the Secretary requests to assist in carrying out this subtitle [7 USCS §§ 1501 et seq.] any funds made available pursuant to the provisions of section 516 [7 USCS § 1516].

**(e)**  Utilization of producer cooperative associations. In carrying out the provisions of this subtitle [7 USCS §§ 1501 et seq.] the Board may, in its discretion, utilize producer-owned and producer-controlled cooperative associations.

**(f)**  Use of resources, data, boards, and committees of Federal agencies. The Board should use, to the maximum extent possible, the resources, data, boards, and the committees of (1) the Soil Conservation Service, in assisting the Board in the classification of land as to risk and production capability and in the development of acceptable conservation practices; (2) the Forest Service, in assisting the Board in the development of a timber insurance plan; (3) the Agricultural Stabilization and Conservation Service, in assisting the Board in the determination of individual producer yields and in serving as a local contact point for farmers where the Board deems necessary; and (4) other Federal agencies in any way the Board deems necessary in carrying out this subtitle [7 USCS §§ 1501 et seq.].

**(g)**  Specialty Crops Coordinator.

  **(1)**  The Corporation shall establish a management-level position to be known as the Specialty Crops Coordinator.

  **(2)**  The Specialty Crops Coordinator shall have primary responsibility for addressing the needs of specialty crop producers, and for providing information and advice, in connection with the activities of the Corporation to improve and expand the insurance program for specialty crops. In carrying out this paragraph, the Specialty Crops Coordinator shall act as the liaison of the Corporation with representatives of specialty crop producers and assist the Corporation with the knowledge, expertise, and familiarity of the producers with risk management and production issues pertaining to specialty crops.

  **(3)**  The Specialty Crops Coordinator shall use information collected from Corporation field office directors in States in which specialty crops have a significant economic effect and from other sources, including the extension service and colleges and universities.

## History

(Feb. 16, 1938, ch 30, Title V, Subtitle A, § 507, 52 Stat. 73; Aug. 1, 1947, ch 440, § 6, 61 Stat. 719; Aug. 25, 1949, ch 512, § 10, 63 Stat. 665; June 6, 1972, *P.L. 92-310*, Title II, Part 2, § 221(b), 86 Stat. 201; Sept. 26, 1980, P.L. 96-365, Title I, § 104, 94 Stat. 1313; Nov. 28, 1990, *P.L. 101-624*, Title XXII, Subtitle A, § 2206, 104 Stat. 3958; Dec. 13, 1991, *P.L. 102-237*, Title VI, §

601(3), 105 Stat. 1878; Oct. 13, 1994, *P.L. 103-354*, Title I, §§ 102(b)(4)(B), (C), 105, 115(b), 119(f)(2), 108 Stat. 3181, 3182, 3204, 3208; June 20, 2000, *P.L. 106-224*, Title I, Subtitle D, § 143, 114 Stat. 391; May 22, 2008, *P.L. 110-234*, Title XII, Subtitle A, § 12033(c), 122 Stat. 1405; June 18, 2008, *P.L. 110-246*, § 4(a), Title XII, Subtitle A, § 12033(c), 122 Stat. 1664, 2167.)

UNITED STATES CODE SERVICE

Copyright © 2015 Matthew Bender & Company, Inc. a member of the LexisNexis Group ™ All rights reserved.